JOHN R. AMBROZ, APPELLANT, V. CORNHUSKER SQUARE LIMITED,
A LIMITED PARTNERSHIP, APPELLEE.

416 N.W.2d 510

Filed November 25, 1987.   No. 86-189.

James D. McFarland of Steven D. Burns, P.C., for appellant.

Kathleen A. Jaudzemis of Cline, Williams, Wright, Johnson & Oldfather, for appellee.

BOSLAUGH, WHITE, CAPORALE, and SHANAHAN, JJ., and BRODKEY, J., Retired, and COLWELL, D.J., Retired.

BOSLAUGH, J.

The question presented in this case is whether an employee, whose contract of employment is a hiring at will, has a cause of action against his employer who terminates the employment in violation of Neb. Rev. Stat. § 81-1932 (Reissue 1981) because the employee refused to submit to a polygraph examination.

The plaintiff, John R. Ambroz, was employed as a security guard by the defendant, Cornhusker Square Limited. The plaintiff's duties were to maintain building security at the Cornhusker Hotel in Lincoln, Nebraska, but did not involve public law enforcement.

The amended petition alleges that on May 7, 1985, the director of security of the defendant demanded that the plaintiff take a truth and deception (polygraph) examination by 4 p.m. that day or his employment would be terminated. The plaintiff refused to take the examination and as a result was wrongfully discharged by the defendant. The amended petition specifically alleges: "The only reason for termination of Plaintiff's employment was that Plaintiff declined to submit to a truth and deception examination as he was entitled to do under the Truth and Deception Examiners Act, <u>Neb. Rev. Stat.</u> §§81-1901 et seq. (Reissue 1981)." The amended petition prays for reinstatement to the position of security guard and for damages. According to the plaintiff's brief, his theory of the case is that it is a common-law tort action for wrongful discharge.

The defendant's general demurrer to the amended petition was sustained, and the petition was dismissed. The plaintiff has appealed.

A general demurrer tests the substantive legal rights of the parties upon admitted facts, including proper and reasonable inferences of law and fact which may be drawn from facts which are well pleaded. *Overman v. Brown*, 220 Neb. 788, 372 N.W.2d 102 (1985), citing *Blanchard v. White*, 217 Neb. 877, 351 N.W.2d 707 (1984). For the purposes of our review, we accept the well-pleaded facts in the petition, as distinguished from conclusions, as true, *Knoell v. Huff*, 224 Neb. 90, 395 N.W.2d 749 (1986); *Abboud v. Lakeview, Inc.*, 223 Neb. 568, 391 N.W.2d 575 (1986); *Reimer v. K N Energy*, 223 Neb. 142, 388 N.W.2d 479 (1986); and *Jeffers v. Bishop Clarkson Memorial Hosp.*, 222 Neb. 829, 387 N.W.2d 692 (1986), and consider only the facts set forth in the petition, *Abboud, supra*.

The Nebraska Licensing of Truth and Deception Examiner's Act, Neb. Rev. Stat. §§ 81-1901 et seq. (Reissue 1981 & Cum. Supp. 1984), provides for the licensing of polygraph and other similar examiners and restricts the use of truth and deception examination of employees by employers.

Section 81-1932 (Reissue 1981) provides:

No employer or prospective employer may require as a condition of employment or as a condition for continued

employment that a person submit to a truth and deception examination unless such employment involves public law enforcement. This shall not be construed to prohibit such employer from asking an employee or applicant to submit to a truth and deception examination if:

(1) No questions are asked during the truth and deception examination concerning the examinee's sexual practices, labor union, political or religious affiliations, or marital relationships;

(2) The examinee is given written and oral notice that the examination is voluntary and that the examinee may discontinue the examination at any time;

(3) The employer or prospective employer has the employee or applicant sign a form stating that the examination is being taken voluntarily;

(4) Questions that are asked prospective employees are job related;

(5) Prospective employees are not preselected for a truth and deception examination in a discriminatory manner;

(6) An employee is only requested to submit to a truth and deception examination if such examination concerns itself with a specific investigation;

(7) The results of a truth and deception examination are not the sole determinant in the termination of employment; and

(8) All questions that are asked during a truth and deception examination and the responses of the examinee are kept on file by the employer for a period of one year.

Section 81-1935 (Reissue 1981) provides:

Except as provided in section 81-1932, any person who violates the provisions of sections 81-1901 to 81-1936 or who falsely states or represents that he or she is or has been an examiner or intern shall be guilty of a Class II misdemeanor.

The amended petition alleges that the contract of employment was oral and for an hourly wage. It does not allege that the plaintiff was hired for a definite period of time. In *Jeffers v. Bishop Clarkson Memorial Hosp., supra*, we held

that "when employment is not for a definite term and *there are no contractual or statutory restrictions upon the right of discharge,* an employer may lawfully discharge an employee whenever and for whatever cause it chooses without incurring liability." (Emphasis in original.) 222 Neb. at 832, 387 N.W.2d at 695, citing *Morris v. Lutheran Medical Center,* 215 Neb. 677, 340 N.W.2d 388 (1983). *Johnston v. Panhandle Co-op Assn.,* 225 Neb. 732, 408 N.W.2d 261 (1987); *Smith v. City of Omaha,* 220 Neb. 217, 369 N.W.2d 67 (1985); *Alford v. Life Savers, Inc.,* 210 Neb. 441, 315 N.W.2d 260 (1982).

In somewhat related cases, we have recognized a constitutional restriction upon the discharge of governmental at-will employees. Although governmental at-will employees may be discharged for no reason at all, they may not be discharged on a basis that infringes upon constitutionally protected interests. *Wood v. Tesch,* 222 Neb. 654, 386 N.W.2d 436 (1986). See, also, *Devine v. Dept. of Public Institutions,* 211 Neb. 113, 317 N.W.2d 783 (1982); *Nebraska Dept. of Roads Emp. A. v. Department of Roads,* 364 F. Supp. 251 (D. Neb. 1973); *Patteson v. Johnson,* 721 F.2d 228 (8th Cir. 1983), *appeal after remand* 787 F.2d 1245 (8th Cir. 1986).

The plaintiff argues that in this case, there is a "statutory restriction" upon the defendant's right to discharge the plaintiff, which creates an exception to the at-will rule. In *Mau v. Omaha Nat. Bank,* 207 Neb. 308, 299 N.W.2d 147 (1980), we recognized that other jurisdictions have adopted public policy exceptions to the rule. We stated at 316, 299 N.W.2d at 151:

> We recognize, however, that the "employment at will" rule is not, in some jurisdictions, an absolute bar to a claim of wrongful discharge. In a number of jurisdictions, an exception to the "terminable at will" rule has been articulated in recent years. Under this exception, an employee may claim damages for wrongful discharge when the motivation for the firing contravenes public policy.

In *Jeffers v. Bishop Clarkson Memorial Hosp.,* 222 Neb. 829, 833, 387 N.W.2d 692, 695 (1986), we stated:

> Except in cases where an employee is deprived of constitutional or *statutory rights* or where contractual

agreements guarantee that employees may not be fired without just cause, the law in this state continues to deny any implied covenant of good faith or fair dealing in employment termination. See, e.g., *Alford v. Life Savers, Inc.*, 210 Neb. 441, 315 N.W.2d 260 (1982); *Feola v. Valmont Industries, Inc.*, 208 Neb. 527, 304 N.W.2d 377 (1981).

(Emphasis supplied.)

Ambroz argues that he was discharged for *refusing* to participate in an activity which is protected under § 81-1932. The relevant portion of the statute provides: "No employer or prospective employer may require as a condition of employment or as a condition for continued employment that a person submit to a truth and deception examination unless such employment involves public law enforcement." We believe the statute is a pronouncement of public policy on the issue of wrongful discharge.

Although 1980 Neb. Laws, L.B. 485, was introduced "to provide procedures, standards, and rules for the licensing of persons who claim to be able to detect truth and/or deception through the use of mechanical instrumentation," Committee Statement, Miscellaneous Subjects Committee, 86th Leg., 2d Sess. (Mar. 29, 1979) (statement of Dave Newell, chairman), the introducer's statement of intent specifically stated, "The bill also regulates the use of truth and deception devices in employment situations. Any employer requiring an employee or applicant, as a condition of employment or continued employment, to take a truth and deception test shall be guilty of a Class II misdemeanor." Introducer's Statement of Intent, 86th Leg., 2d Sess. (Feb. 9, 1979) (statement of Dave Newell, chairman and principal introducer).

From the legislative history of § 81-1932, it is apparent that the Nebraska Legislature was promulgating public policy. The statute speaks for itself in language that is clear and unambiguous and specifically prohibits an employer's use of the polygraph to deny employment.

In *Strahl v. Miller*, 97 Neb. 820, 824, 151 N.W. 952, 953 (1915), we said:

The law seems to be well settled that, when a statute

commands or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his benefit, or for a wrong done him contrary to its terms. But it must be affirmatively shown that the plaintiff suffered some injury in consequence of the failure of the defendant to comply with the statute, and that such injury resulted proximately from such failure. The fact that the statute does not in terms impose civil liability is immaterial. It is not necessary to the maintenance of an action that the statute so expressly provide.

The decisions from other jurisdictions are not unanimous.

Where there is no statute on the matter, the cases generally hold that an employee at will has no cause of action for wrongful discharge because he refused to submit to a truth and deception examination. L. Larson & P. Borowsky, Unjust Dismissal § 7.05 (1987). But in cases involving a statute similar to § 81-1932, a number of courts have held that the statute creates an exception to the common-law rule and permits an employee who is discharged in violation of such a statute to recover damages from the employer.

In *Townsend v. L. W.M. Management, Inc.*, 64 Md. App. 55, 494 A.2d 239 (1985), a case involving a statute similar to § 81-1932, the court held that it would " 'recognize a cause of action for abusive discharge by an employer of an at will employee when the motivation for the discharge contravenes some clear mandate of public policy,' " 64 Md. App. at 60, 494 N.W.2d at 242, and that "[t]he source of the 'clear mandate of public policy' may be found in legislative enactments . . . . In any case, the public policy found must be 'sufficiently clear to provide the basis for a tort or contract action for wrongful discharge.' [291 Md.] at 42, 432 A.2d 464." 64 Md. App. at 61, 494 A.2d at 242.

*Molush v. Orkin Exterminating Co., Inc.*, 547 F. Supp. 54 (E.D. Pa. 1982), involved a similar factual situation. In the *Molush* case the court held at 56:

A discharged employee may have a cause of action against his employer when the employer exercises his otherwise absolute right to terminate the employment relationship in

> a manner which contravenes or undermines an important public policy. . . . Such a public policy has been found by courts to be embodied in Pennsylvania's anti-polygraph statute. Courts have upheld tort actions for wrongful discharge of employees for their refusal to submit to polygraph examinations . . . and upheld actions for wrongful discharge based on the results of a polygraph examination allegedly required as a condition of continued employment . . . .

See, also, *Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363 (3d Cir. 1979); *Heller v. Dover Warehouse Market, Inc.*, 515 A.2d 178 (Del. Super. 1986); *Moniodis v. Cook*, 64 Md. App. 1, 494 A.2d 212 (1985); Annot., 12 A.L.R.4th 544 (1982).

Unlike the plaintiff in *Collins v. Baker's Supermarkets*, 223 Neb. 365, 389 N.W.2d 774 (1986), the plaintiff in this case was discharged, not merely demoted.

This is a case involving a discharge in violation of a clear, statutorily mandated public policy. We believe that it is important that abusive discharge claims of employees at will be limited to manageable and clear standards. The right of an employer to terminate employees at will should be restricted only by exceptions created by statute or to those instances where a very clear mandate of public policy has been violated. This case falls within that rule.

We conclude that the order of the district court sustaining the demurrer of the defendant was erroneous.

The judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

GRANT, J., participating on briefs.