CATHY L. JACKSON, APPELLANT, V. MORRIS COMMUNICATIONS
CORPORATION, DOING BUSINESS AS YORK NEWS-TIMES, APPELLEE.

657 N.W.2d 634

Filed March 7, 2003. No. S-01-1355.

Stefanie J. Flodman, of Johnson, Flodman, Guenzel &
Widger, for appellant.

Charles W. Campbell, of Angle, Murphy, Valentino &
Campbell, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN,
MCCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

This case presents the question whether this court should
recognize a cause of action for retaliatory discharge when an

employer discharges an employee for filing a workers' compensation claim. Cathy L. Jackson appeals the district court's dismissal of her petition based upon the failure to state a cause of action. The petition alleged that Morris Communications Corporation, doing business as York News-Times, terminated her employment because she filed a workers' compensation claim and that she suffered damages. The district court dismissed the petition because Nebraska law has not recognized a cause of action for wrongful discharge in retaliation for filing a workers' compensation claim.

We determine that a public policy exception to the at-will employment doctrine applies to allow a cause of action for retaliatory discharge when an employee is fired for filing a workers' compensation claim. Accordingly, we reverse, and remand for further proceedings.

## BACKGROUND

Jackson filed a petition alleging the following: In November 1994, she was employed by the York News-Times to work in the mailroom division of its distribution department. Her initial wage was $4.50 per hour, with a schedule of 30.5 hours per week. In January 1995, she was promoted to bundle driver and her hourly pay was raised. In July 1996, she was promoted to cocirculation manager, with a salary of $15,000 per year and various benefits.

In March 1997, she injured her left wrist while operating a labeling machine. She reported the injury, and a report was filed in accordance with the workers' compensation laws. Jackson sought medical attention and was treated conservatively. By April, she was unable to perform some of her required duties because of the injury. As a result, her duties and pay were adjusted. In May, her supervisor began logging alleged problems with her performance and met with her three times between May 19 and 27 to criticize her performance.

On June 2, 1997, Jackson's physical therapist contacted her supervisor, recommending that Jackson not perform any repetitive duties with her left wrist. The York News-Times fired Jackson on June 16. At the end of July, Jackson's wrist was x-rayed and she learned that the wrist was fractured. Because of the delay in receiving treatment and because she had continued to perform her

duties at work for several months, she suffered bone loss and required a full fusion of the left wrist.

Jackson alleged that she was discharged because she was injured and had filed a workers' compensation claim. The petition stated that under the Nebraska Workers' Compensation Act, Neb. Rev. Stat. § 48-101 et seq. (Reissue 1993 & Cum. Supp. 1996), it is the public policy of Nebraska that workers receive the benefits of the act. Jackson contended that this policy justified the recognition of a cause of action for wrongful discharge when an employee is discharged in retaliation for filing a workers' compensation claim.

The York News-Times demurred, alleging that the petition failed to state a cause of action and that the action was barred by the statute of limitations. The court sustained the demurrer and dismissed the petition, stating that the cause of action was not yet recognized by Nebraska law and that a trial court should not create a new cause of action. Jackson appeals.

## ASSIGNMENT OF ERROR

Jackson assigns, rephrased, that the district court erred in failing to recognize a cause of action and dismissing her petition.

## STANDARD OF REVIEW

■ Whether a petition states a cause of action is a question of law, regarding which an appellate court has an obligation to reach a conclusion independent of that of the inferior court. *Malone v. American Bus. Info.*, 262 Neb. 733, 634 N.W.2d 788 (2001).

## ANALYSIS

Jackson urges this court to adopt a cause of action for retaliatory discharge when an employer discharges an employee for filing a workers' compensation claim. She argues that her discharge contravenes public policy and should be recognized as an exception to the at-will employment doctrine. York News-Times, however, contends that there is no clear pronouncement of public policy to allow the recognition of the cause of action.

### PUBLIC POLICY EXCEPTIONS TO AT-WILL EMPLOYMENT DOCTRINE

■ The clear rule in Nebraska is that unless constitutionally, statutorily, or contractually prohibited, an employer, without

incurring liability, may terminate an at-will employee at any time with or without reason. *Malone v. American Bus. Info., supra.* We recognize, however, a public policy exception to the at-will employment doctrine. *Id.* See, *Mau v. Omaha Nat. Bank,* 207 Neb. 308, 299 N.W.2d 147 (1980), *disapproved on other grounds, Johnston v. Panhandle Co-op Assn.,* 225 Neb. 732, 408 N.W.2d 261 (1987). Under the public policy exception, we will allow an employee to claim damages for wrongful discharge when the motivation for the firing contravenes public policy. *Malone v. American Bus. Info., supra.*

This court has applied the public policy exception in several cases. In one case, an employee alleged that he was terminated because he refused to take a polygraph test. *Ambroz v. Cornhusker Square Ltd.,* 226 Neb. 899, 416 N.W.2d 510 (1987). We noted that under the Licensing of Truth and Deception Examiners Act, Neb. Rev. Stat. § 81-1901 et seq. (Reissue 1999), an employer could not condition employment on a requirement that a person submit to a truth and deception examination. See, § 81-1932; *Ambroz v. Cornhusker Square Ltd., supra.* A violation of § 81-1932 is a Class II misdemeanor. See § 81-1933. As a result, we determined that the statutory provision constituted a pronouncement of public policy that clearly prohibited the use of a polygraph to deny employment. We then defined the circumstances in which the public policy exception would be recognized, stating:

> This is a case involving a discharge in violation of a clear, statutorily mandated public policy. We believe that it is important that abusive discharge claims of employees at will be limited to manageable and clear standards. The right of an employer to terminate employees at will should be restricted only by exceptions created by statute or to those instances where a very clear mandate of public policy has been violated. This case falls within that rule.

*Ambroz v. Cornhusker Square Ltd.,* 226 Neb. at 905, 416 N.W.2d at 515.

We have also recognized a public policy exception when an employee claimed he was discharged for reporting his suspicions that his employer was violating state odometer fraud laws. *Schriner v. Meginnis Ford Co.,* 228 Neb. 85, 421 N.W.2d 755

(1988). Unlike *Ambroz*, there was no statute in *Schriner* that prohibited an employer from discharging an employee for reporting criminal conduct. We noted, however, that it was a crime to engage in odometer fraud in Nebraska. See Neb. Rev. Stat. § 60-132 et seq. (Reissue 1998). We then reasoned that the enforcement of the criminal code is a basic public policy and that the enactment of the criminal statute was a declaration of public policy against odometer fraud. But we then found that an action for wrongful discharge could lie only if the employee acted in good faith when reporting the violation of the criminal code. Because there was no evidence that the employee had reasonable cause to believe that his employer acted unlawfully, we affirmed the trial court's order granting the employer summary judgment. The Nebraska Court of Appeals has also found a public policy exception when an employee was discharged for refusing to drive a truck that had defective brakes, because to do so would be a violation of the criminal code. *Simonsen v. Hendricks Sodding & Landscaping*, 5 Neb. App. 263, 558 N.W.2d 825 (1997).

More recently, we refused to find a public policy exception when an employee was discharged for asserting a claim under the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 et seq. (Reissue 1998). *Malone v. American Bus. Info.*, 262 Neb. 733, 634 N.W.2d 788 (2001). We noted that unlike the act in *Ambroz*, the Nebraska Wage Payment and Collection Act did not contain a specific provision restricting an employer's right to discharge an at-will employee. We further noted that cases from other jurisdictions were of little guidance because of differences in statutory language. States that allowed a claim for retaliatory discharge had statutes that prohibited employers from discharging employees for making a claim or made such a discharge a crime. We stated that the act was primarily remedial in nature and provided specific procedures for the enforcement of substantive rights to compensation for work performed that arise not from the statute but from the employment relationship itself. We ultimately concluded that the Nebraska Wage Payment and Collection Act "does not represent a 'very clear mandate of public policy' which would warrant recognition of an exception to the employment-at-will doctrine." *Malone v. American Bus. Info.*, 262 Neb. at 739, 634 N.W.2d at 793.

NEBRASKA WORKERS' COMPENSATION ACT

Section 48-145(1) requires employers to carry insurance or provide money to the State Treasurer as a self-insurer. Section 48-145(3) then provides that an employer who fails to comply with the section will be required to respond in damages to an employee for personal injuries.

The Nebraska Workers' Compensation Act does not specifically prohibit an employer from discharging an employee for filing a claim, nor does it specifically make it a crime for an employer to do so. The statutes do, however, contain two other criminal provisions. Section 48-144.04 makes the failure to file a report required by the act a Class II misdemeanor. In addition, under § 48-145.01, it is a Class I misdemeanor for any employer to willfully fail to secure payment of compensation under the act as required by § 48-145.

Courts in other jurisdictions have recognized a statutory exception to the at-will employment doctrine when an employee is discharged in retaliation for filing a claim. But many of these jurisdictions have done so because of a statute that specifically prohibits discharge for the filing of a claim or makes such a discharge a crime. See, *Michaels v. Anglo American Auto Auctions*, 117 N.M. 91, 869 P.2d 279 (1994); *Lally v. Copygraphics*, 85 N.J. 668, 428 A.2d 1317 (1981); *Sventko v Kroger*, 69 Mich. App. 644, 245 N.W.2d 151 (1976). See *Brown v. Transcon Lines*, 284 Or. 597, 588 P.2d 1087 (1978) (statute prohibits discrimination against employee for filing claim). In addition, some courts have recognized an exception based on other statutes that are more detailed than Nebraska's act. See, *Krein v. Marian Manor Nursing Home*, 415 N.W.2d 793 (N.D. 1987) (interpreting public policy statement in act); *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441, 443 (Tenn. 1984) (interpreting statutory language "all but identical" to that in *Frampton v. Central Ind. Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973)); *Frampton v. Central Ind. Gas Co.*, 260 Ind. at 252, 297 N.E.2d at 427-28 (statute provided that no contract, rule, regulation, " 'or *other device*' " could operate to relieve employer from workers' compensation obligation).

Some courts, however, recognize an exception, even in the absence of a specific statutory prohibition. For example, the

Supreme Court of Nevada adopted an exception in the absence of a clear statutory prohibition. *Hansen v. Harrah's*, 100 Nev. 60, 675 P.2d 394 (1984). The court noted that workers' compensation laws reflect a clear public policy favoring economic security for injured employees. The court stated:

"Unquestionably, compensation laws were enacted as a humanitarian measure. The modern trend is to construe the industrial insurance acts broadly and liberally, to protect the interest of the injured worker and his dependents. A reasonably, liberal and practical construction is preferable to a narrow one, since these acts are enacted for the purpose of giving compensation, not for the denial thereof."

*Id.* at 63, 675 P.2d at 396. The Nevada court observed that if employers are permitted to penalize employees for filing workers' compensation claims, an important public policy would be undermined:

Failure to recognize the cause of action of retaliatory discharge for filing a workmen's compensation claim would only undermine Nevada's Act and the strong public policy behind its enactment. . . .

"The Act creates a duty in the employer to compensate employees for work-related injuries (through insurance) and a right in the employee to receive such compensation. But in order for the goals of the Act to be realized and for public policy to be effectuated, the employee must be able to exercise his right in an unfettered fashion without being subject to reprisal. If employers are permitted to penalize employees for filing workmen's compensation claims, a most important public policy will be undermined. The fear of being discharged would have a deleterious effect on the exercise of a statutory right. Employees will not file claims for justly deserved compensation—opting, instead, to continue their employment without incident. The end result, of course, is that the employer is effectively relieved of his obligation."

*Hansen v. Harrah's*, 100 Nev. at 63-64, 675 P.2d at 396, quoting *Frampton v. Central Ind. Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973). See, also, *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 630 P.2d 186 (1981) (adopting exception even though legislature

had twice considered, and not adopted, amendments that would specifically prohibit discharge); *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 384 N.E.2d 353, 23 Ill. Dec. 559 (1978) (adopting exception in absence of explicit statutory provision at time of discharge, but noting that explicit provision had been added by time of appeal).

A minority of courts has refused to recognize an exception, often with little analysis or explanation. See, e.g., *Federici v. Mansfield Credit Union*, 399 Mass. 592, 506 N.E.2d 115 (1987) (no specific statutory prohibition); *Smith v. Piezo Technology & Prof. Adm'rs*, 427 So. 2d 182 (Fla. 1983) (providing little analysis, and recognizing statutory claim); *Raley v. Darling Shop of Greenville, Inc.*, 216 S.C. 536, 59 S.E.2d 148 (1950) (providing no analysis). But, the refusal to recognize the exception generally is done in deference to the legislature. See *Kelly v. Mississippi Valley Gas Co.*, 397 So. 2d 874 (Miss. 1981).

It is true that Nebraska has not specifically prohibited an employer from discharging an employee for filing a workers' compensation claim. Nor has Nebraska specifically made this a crime. Although the Nebraska Workers' Compensation Act contains some criminal provisions, these relate to the willful failure of an employer to carry insurance or make self-insurance payments under the act. They do not specifically apply to the discharge of an employee who has filed a claim. Thus, we are not presented with the same type of clear mandate of public policy as was present in *Ambroz v. Cornhusker Square Ltd.*, 226 Neb. 899, 416 N.W.2d 510 (1987), and *Schriner v. McGinnis Ford Co.*, 228 Neb. 85, 421 N.W.2d 755 (1988). But we also recognize that the Nebraska Workers' Compensation Act has a much wider scope and purpose than does the Nebraska Wage Payment and Collection Act that we addressed in *Malone v. American Bus. Info.*, 262 Neb. 733, 634 N.W.2d 788 (2001). There, we noted that the Nebraska Wage Payment and Collection Act is largely remedial in nature and provides specific procedures for the enforcement of substantive rights to compensation for work performed that arise not from the statute but from the employment relationship itself. The Nebraska Workers' Compensation Act, however, creates a range of substantive rights that arise from the statute itself.

Unlike the Nebraska Wage Payment and Collection Act, the general purpose and unique nature of the Nebraska Workers' Compensation Act itself provides a mandate for public policy. In the early 1900's, state legislatures began enacting workers' compensation laws to provide employees with more effective remedies for work-related injuries than was available under tort law. See, Jean C. Love, *Retaliatory Discharge for Filing a Workers' Compensation Claim: The Development of a Modern Tort Action*, 37 Hastings L.J. 551 (1986). Tort law provided complete compensation, but required proof of negligence, and actions were often barred by affirmative defenses such as assumption of the risk and contributory negligence. *Id.* The result was a system that is often referred to as a "compromise" between employees and employers. *Id.* Employees gave up complete compensation in exchange for no-fault benefits that are received quickly and provide certain reimbursement for most economic losses. *Id.*

We have recognized that the Legislature enacted the Nebraska Workers' Compensation Act to relieve injured workers from the adverse economic effects caused by a work-related injury or occupational disease. *Foote v. O'Neill Packing*, 262 Neb. 467, 632 N.W.2d 313 (2001). In light of this beneficent purpose of the act, we have consistently given the act a liberal construction to " ' "carry out justly the spirit of the Nebraska Workers' Compensation Act." ' " *Foote v. O'Neill Packing*, 262 Neb. at 473, 632 N.W.2d at 320, quoting *Phillips v. Monroe Auto Equip. Co.*, 251 Neb. 585, 558 N.W.2d 799 (1997).

Thus, unlike the Nebraska Wage Payment and Collection Act that we examined in *Malone*, the Nebraska Workers' Compensation Act is unique because of its overriding purpose and the substantive rights it creates for employees. As the court stated in *Hansen v. Harrah's*, 100 Nev. 60, 675 P.2d 394 (1984), the act creates a duty to provide compensation through insurance or self-insurance that would be seriously frustrated if employers were able to prevent employees from filing claims through the threat of discharge. We are cognizant of an employer's interest in having freedom to discharge at-will employees, but as one court has noted, the effect of the substitution of workers' compensation for the common law was to eliminate a cause of action by an employee against his or her employer for work-related injuries.

*Leach v. Lauhoff Grain Co.*, 51 Ill. App. 3d 1022, 366 N.E.2d 1145, 9 Ill. Dec. 634 (1977). To hold that there is not a clear public policy warranting an exception to the at-will employment doctrine would ignore the beneficent nature of the Nebraska Workers' Compensation Act. This, in effect, would allow an employer to say to the employee: " 'Although you have no right to a tort action, you have a right to a workmen's compensation claim which, while it may mean less money, is a sure thing. However, if you exercise that right, we will fire you.' " *Id.* at 1024, 366 N.E.2d at 1147, 9 Ill. Dec. at 636.

 The Nebraska Workers' Compensation Act was promulgated to serve an important public purpose, and a rule which allows fear of retaliation for the filing of a claim undermines that policy. We are convinced that the unique and beneficent nature of the Nebraska Workers' Compensation Act presents a clear mandate of public policy which warrants application of the public policy exception. Thus, we recognize a public policy exception to the at-will employment doctrine and allow an action for retaliatory discharge when an employee has been discharged for filing a workers' compensation claim.

Here, Jackson filed a petition alleging that she was discharged in retaliation for filing a claim. The district court dismissed the petition because it did not recognize a cause of action for retaliatory discharge and did not address whether the petition would state a cause of action if it were recognized. Accordingly, we reverse, and remand for further proceedings. We note that to the extent that Jackson's petition states conclusions and lacks factual allegations, she should be given leave to amend. We also note that the district court did not address the York News-Times' allegation that the action is barred by the statute of limitations, and the York News-Times did not cross-appeal the issue. Thus, we do not address it on appeal. See, *Weimer v. Amen*, 235 Neb. 287, 455 N.W.2d 145 (1990); *Hays v. County of Douglas*, 192 Neb. 580, 223 N.W.2d 143 (1974).

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.