IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

O'BRIEN V. BELLEVUE PUBLIC SCHOOLS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ROBERT O'BRIEN, APPELLANT,
V.
BELLEVUE PUBLIC SCHOOLS, APPELLEE.

Filed April 29, 2014.    No. A-12-843.

Appeal from the District Court for Sarpy County: WILLIAM B. ZASTERA, Judge. Affirmed.

Jeremy C. Jorgenson for appellant.

Laura K. Essay, Kevin R. McManaman, and Michael W. Khalili, of Knudsen, Berkheimer, Richardson & Endacott, L.L.P., for appellee.

IRWIN, PIRTLE, and BISHOP, Judges.

BISHOP, Judge.

Robert O'Brien filed a lawsuit against Bellevue Public Schools (BPS) claiming that he was wrongfully discharged from his employment as a carpenter with the school district because he reported violations of state and federal regulations pertaining to the demolition and disposal of asbestos and asbestos-containing materials. The district court for Sarpy County granted summary judgment in favor of BPS. We affirm.

BACKGROUND

O'Brien was employed by BPS as a carpenter from 2006 to July 2009. Sometime between May and June 2009, he reported in one instance to his immediate supervisor and in another instance to the vice principal of the middle school in which he was working that he believed that floor tiles and countertops he had been ordered to demolish and remove contained asbestos.

- 1 -

In July 2009, O'Brien's supervisors completed an annual performance review and found O'Brien "not adequate" in the areas of teamwork, quantity of work, punctuality/attendance, reliability/dependability, conscientiousness, initiative, and cooperation.

On July 7, 2009, a meeting was held to discuss O'Brien's review and job performance. The purpose of the meeting was not to terminate O'Brien's employment. O'Brien attended, along with Mike Potter (O'Brien's immediate supervisor) and Matt Blomenkamp (the coordinator for buildings and grounds and Potter's immediate supervisor). When Potter and Blomenkamp expressed their concerns about O'Brien's job performance, O'Brien repeatedly raised his voice and behaved in an agitated and aggressive manner. At no time during the meeting did O'Brien mention asbestos. O'Brien was dismissed from work for the day, and a formal letter of reprimand was given to O'Brien summarizing that meeting. O'Brien signed that letter on July 12.

On July 13, 2009, O'Brien attended an informal meeting with Jim McMillan, a BPS administrator, and Blomenkamp. At the meeting, O'Brien admitted to poor performance in the areas of reliability, punctuality, and getting along with coworkers. He also apologized for his behavior at the July 7 meeting, acknowledging that he had "butted heads with Potter a few times" and that he should not have told Blomenkamp that he "wasn't one of the kids in the school district, not to speak to me like that." O'Brien did not mention asbestos during the July 13 meeting.

Blomenkamp sent O'Brien a letter, dated July 13, 2009, which stated:

> This letter is in regard to your recent evaluation and past and present behavior as an employee for [BPS]. Your inability to cooperate with your supervisors, poor work performance, and refusal to be formally evaluated show a lack of judgment, respect and conscientiousness, all of which are essential functions of your position.

The letter indicated that a meeting was scheduled for July 16 and that O'Brien would have an opportunity to be heard concerning his employment status.

On July 16, 2009, a final meeting was held. O'Brien, Blomenkamp, and an assistant superintendent attended. At the meeting, O'Brien admitted that reliability and punctuality were his "biggest downfalls" and that he had "butted heads" with Potter. O'Brien was informed that the meeting was his opportunity to address anything related to his employment. O'Brien did not mention asbestos during the meeting.

In a letter dated July 17, 2009, BPS terminated O'Brien's employment for his inability to cooperate with supervisors, inefficient work performance, and lack of punctuality.

On November 24, 2010, O'Brien filed a complaint claiming "wrongful discharge in violation of public policy including, but not limited to, the right to be free from retaliatory discharge for reporting violations of state and federal regulations pertaining to the demolition and disposal of asbestos and asbestos containing materials." O'Brien alleged that BPS retaliated against him after he reported actions by BPS which were unlawful under state or federal law and "which violations imperiled the health, safety and welfare of [O'Brien], [O'Brien's] co-workers, and students and other employees of [BPS]."

In a deposition taken in May 2012, O'Brien testified, "I believe I was terminated because I raised to the attention of [BPS] administration that I was carrying out work orders that were

HAZMAT related. When I made complaints, I believe I was fired for making those complaints." O'Brien clarified that by "HAZMAT," he meant asbestos. O'Brien acknowledged that BPS had an asbestos policy and that he understood the policy to require employees to stop work and report to a supervisor if they saw asbestos. When asked if there was anything wrong with that policy, O'Brien answered, "No." O'Brien understood that after reporting asbestos, he was to let his immediate supervisor handle it, and then he would wait until he was given the next project. It was also O'Brien's belief that small amounts of asbestos, less than 3 square feet, could be removed without contacting a supervisor.

O'Brien further testified in his May 2012 deposition that in the summer of 2007, he complained to Potter that "we" had been removing asbestos countertops and that he had received another work order to remove asbestos flooring. According to O'Brien, Potter put his fingers to his mouth and told him to "shush," and Potter later told O'Brien that Potter himself had removed the flooring later that night. O'Brien did not observe Potter remove anything, but "[i]t was gone the next day." O'Brien testified that he believed he had committed an unlawful act by removing the countertops that contained asbestos, although he also acknowledged that he did not know they contained asbestos until told that by another employee. O'Brien testified that on another occasion in the summer of 2007, O'Brien realized that he was removing asbestos flooring. He reported it to a vice principal who happened to pass by the room, and he was instructed to stop work on the project. The flooring was later removed by asbestos abatement professionals. It should be noted that although O'Brien testified repeatedly during his deposition that his reports about asbestos were made in the summer of 2007, he at one point indicates that he was terminated from employment shortly after making his last report, which suggests the reports about asbestos were made in 2009. During oral arguments before this court, counsel confirmed the reports were made in 2009.

In his deposition, O'Brien acknowledged that he had never been forced to remove asbestos against his will, nor was he asked to remove asbestos after reporting its presence. O'Brien denied ever being reprimanded or disciplined for reporting the presence of asbestos or suspected presence of asbestos or for not removing asbestos. O'Brien acknowledged that he was subject to annual reviews, and the "guys [he] worked with," were also subject to such reviews. However, according to O'Brien, this was the first negative annual performance review he had received during his 3½ years of employment at BPS. O'Brien stated that after his July 7, 2009, evaluation,

> I thought I was on my way out . . . [b]ecause of the conversation I had with the contractor that I worked with on my last project with BPS . . . Blomenkamp had told [the contractor] that they had pulled me off that project, my last project was a Nature Outdoor Explore Classroom because of my -- that I was aggressive, my attitude, aggressive attitude.

O'Brien stated that he took a couple vacation days after he was pulled from that project, noting, "I got pulled off two projects right in a row and then I took two days vacation, day and half vacation, and when I came back there was a meeting on protocols of taking vacation." In discussing the July 7 evaluation meeting, O'Brien noted that Potter claimed that O'Brien "came across the room at him aggressively and he was in fear for his life," but O'Brien stated that all he did was turn toward him to ask him if he wrote "these things" in his evaluation. O'Brien

acknowledged that Blomenkamp told him to calm down, and the evaluation was discussed. When told that he did not get along with supervisors or coworkers, O'Brien noted that he always helped his coworkers and that "[t]he only person I didn't get along with was my supervisor." O'Brien confirmed that concerns were expressed regarding the efficiency and quality of his work, and punctuality, and he became frustrated "because I was being told I didn't get along with my co-workers, my quality of work." There was no mention of asbestos or reports of asbestos during this evaluation meeting, and O'Brien affirmed that his frustrations at that meeting had nothing to do with asbestos. He acknowledged receiving a formal letter of reprimand after this meeting. O'Brien had a subsequent meeting with McMillan and Blomenkamp, which meeting O'Brien recorded without their knowledge. O'Brien confirmed that he had stated during the recorded meeting that he needed to work on punctuality, reliability, and getting along with his peers better.

In the meeting on July 16, 2009, O'Brien stated he met with Blomenkamp and Doug Townsend, an administrator "right below" the superintendent of schools. O'Brien also recorded that meeting without the knowledge of other persons present. O'Brien stated that he took to the meeting his laptop with pictures documenting the work he had done over a 6- to 7-month period and that he had written a response to the written reprimand and "was going to present that and they said I didn't need to." O'Brien claimed he asked twice if he could read it and was told he did not need to do so. The following colloquy then took place:

> [Counsel for BPS:] I'm going to read a quote that was stated on the recording No. 2 at 2720, quote, I know that me and Mike have butted heads a few times along the way. Those are areas I need to work on for sure as well as I believe reliability that goes along with punctuality are my biggest downfalls I believe as an employee for [BPS] that I need to address.
>
> [O'Brien:] That sounds right, yes.
> [Counsel:] Do you think you were being disciplined due to asbestos at this point?
> [O'Brien:] Yes.
> [Counsel:] Did you bring any asbestos issues up at this point?
> [O'Brien:] It was in my letter that day. I never got to read it.
> [Counsel:] Did you say anything verbally regarding asbestos?
> [O'Brien:] Yes, to Mike Potter.
> [Counsel:] At this meeting?
> [O'Brien:] No, not at that meeting. He wasn't at that meeting.

BPS filed a motion for summary judgment. After a hearing, the district court sustained that motion and dismissed O'Brien's complaint. The court stated in its order that O'Brien admitted that he had reported the suspected presence of asbestos to his supervisor but that he "never reported violations of state and federal regulations." O'Brien also admitted that at a meeting to discuss his work performance prior to his termination, "the topic of asbestos was not mentioned during the meeting." The court also noted documentation that showed O'Brien's work performance was inadequate; that at a meeting to discuss his performance, the asbestos issue never came up; and that O'Brien was "terminated from his position for his inability to cooperate with supervisors, inefficient work performance, and lack of punctuality." The court found that

BPS "terminated [O'Brien] for a legitimate, nonretaliatory reason unrelated to his reports of the suspected presence of asbestos." O'Brien appeals.

## ASSIGNMENTS OF ERROR

O'Brien assigns, restated, that the district court erred when it sustained BPS' motion for summary judgment because (1) the court's order was unclear whether it found (a) that O'Brien never reported to BPS that its demolition and disposal of asbestos was in violation of state and federal regulations, or (b) that O'Brien never reported to state and federal authorities those alleged violations, and that neither finding is sufficient to dismiss on summary judgment; and (2) a material issue of fact exists as to whether BPS' reasons for terminating O'Brien's employment was pretextual.

## STANDARD OF REVIEW

In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives the party the benefit of all reasonable inferences deducible from the evidence. *Peterson v. Homesite Indemnity Co.*, 287 Neb. 48, 840 N.W.2d 885 (2013).

An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Id*.

## ANALYSIS

*District Court's Finding Regarding*
*Reporting of Violations.*

O'Brien's first assigned error pertains to an alleged lack of clarity in a factual finding made in the district court's order granting summary judgment in favor of BPS. O'Brien claims that it is unclear whether the court found that (1) O'Brien never reported to BPS that its demolition and disposal of asbestos was in violation of state and federal regulations or (2) that O'Brien never reported those alleged violations to state and federal authorities. Further, O'Brien claims, "neither finding is sufficient to dismiss the Complaint on Summary Judgment." Brief for appellant at 4.

The record is clear that O'Brien did not report violations of state and federal regulations either to BPS or to state and federal authorities. Rather, O'Brien simply reported the suspected presence of asbestos to his supervisor and to a building administrator, which he was expected to do pursuant to a school policy regarding asbestos. The trial court stated in its final order:

> The Court initially notes that there was some discrepancy between what [O'Brien] alleged in his Complaint, and the information he provided during his deposition. In his Complaint, [O'Brien] states that he was wrongfully terminated because he reported state and federal violations pertaining to the removal of asbestos. However, in his deposition, [O'Brien] admits that he reported the suspected presence of asbestos to his supervisor on two occasions, but that he never reported violations of state and federal regulations. Moreover, the record reflects that there was documentation to show that [O'Brien's]

work performance was not adequate. Based on the evidence, this Court finds that [BPS] terminated [O'Brien] for a legitimate, non-retaliatory reason unrelated to his reports of the suspected presence of asbestos. [O'Brien] was terminated from his position for his inability to cooperate with supervisors, inefficient work performance, and lack of punctuality. [Citation omitted.] [O'Brien] stated in his deposition that during the meeting held to discuss his performance, he quickly became frustrated and stated that he believed he was going to be terminated for his aggression. [O'Brien] admitted that the topic of asbestos was not mentioned during the meeting, and that his frustration did not have anything to do with alleged reports he made to his supervisor regarding asbestos concerns. Based on the aforementioned, this Court finds that [BPS] has met its burden to show that there are no genuine issues of material fact, and that summary judgment is appropriate.

We find the distinction O'Brien tries to make between the two alleged interpretations regarding the reporting of violations of state and federal regulations to be immaterial to the trial court's decision to grant summary judgment. Whether O'Brien reported violations of state and federal regulations to BPS or to state and federal authorities is irrelevant, since the record does not support that he did either. And although the distinction was raised in his assignment of error, even O'Brien acknowledges in the argument section of his brief that whether he reported violations of regulations to BPS or to state and federal authorities is "irrelevant" because

his claim does not have to rise to the level of reporting asbestos violations of state and federal regulations to his employer, or reporting asbestos violations to the state or federal government, because getting fired for merely providing information relating to a potential violation or suffering a disciplinary action as a result of calling attention to potential asbestos hazards is unlawful . . . .

Brief for appellant at 12.

O'Brien asserts that the district court erred "because there is no objective standard requiring such reporting" of state and federal regulations; rather, "all O'Brien would be required to do is demonstrate his abusive discharge claim contravenes public policy by 'manageable and clear standards' under *Ambroz v. Cornhusker Square Ltd.*, 226 Neb. 899, 905, 416 N.W.2d 510, 515 (1987)." Brief for appellant at 9. O'Brien appears to be arguing that he did not need to report *actual* violations of state and federal regulations related to asbestos for his wrongful discharge claim to survive; rather, he only needed to report a *potential* violation or *potential* asbestos hazard. And if he was fired for reporting a potential violation or potential asbestos hazard, that violates public policy and qualifies as an exception to the at-will employment doctrine.

O'Brien's argument about a public policy exception to the at-will employment doctrine for reporting potential violations or potential asbestos hazards was not specifically assigned in the assigned errors section of his brief titled "Statement of each error O'Brien's [sic] contends was made by the trial court." Errors argued but not assigned will not be considered on appeal. *Butler County Dairy v. Butler County*, 285 Neb. 408, 827 N.W.2d 267 (2013). However, O'Brien's complaint did raise the issue of wrongful discharge based on public policy, and since a summary judgment decision is based upon the pleadings and admitted evidence, we will review the proceeding for plain error. Plain error is error plainly evident from the record and of such a

nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Kuhnel v. BNSF Railway Co.*, 287 Neb. 541, ___ N.W.2d ___ (2014).

*Plain Error Review of Public Policy*
*Exception to At-Will Employment.*

O'Brien was an at-will employee. The general rule in Nebraska is that unless constitutionally, statutorily, or contractually prohibited, an employer, without incurring liability, may terminate an at-will employee at any time with or without reason. *Riesen v. Irwin Indus. Tool Co.*, 272 Neb. 41, 717 N.W.2d 907 (2006). However, under the public policy exception to the at-will employment doctrine, an employee can claim damages for wrongful discharge when the motivation for the firing contravenes public policy. *Jackson v. Morris Communications Corp.*, 265 Neb. 423, 657 N.W.2d 634 (2003). The Nebraska Supreme Court has further clarified that

> it is important that abusive discharge claims of employees at will be limited to manageable and clear standards. The right of an employer to terminate employees at will should be restricted only by exceptions created by statute or to those instances where a very clear mandate of public policy has been violated.

*Ambroz v. Cornhusker Square Ltd.*, 226 Neb. 899, 905, 416 N.W.2d 510, 515 (1987).

Accordingly, for a wrongful discharge claim to be available to O'Brien, O'Brien's act of reporting the presence of asbestos to his employer would have to fall within an exception to the at-will employment doctrine created either by statute or by a very clear mandate of public policy.

We note that O'Brien did not plead any specific statutory or public policy exceptions to the at-will doctrine in his complaint; however, he asserts on appeal that certain federal statutes

> are a very clear mandate of public policy that getting fired for merely providing information relating to a potential violation or suffering a disciplinary action as a result of calling attention to potential asbestos hazards is unlawful and certainly should fall within the limits of the "manageable and clear standards" discussed in Ambroz v. Cornhusker Square Ltd.

Brief for appellant at 11.

In response, BPS asserts that "O'Brien's brief on appeal is littered with issues that were not before the District Court below." Brief for appellee at 8. BPS further claims in its brief that the federal statutes argued by O'Brien on appeal were not included in his complaint, argued in response to BPS' motion for summary judgment, or considered by the trial court. We agree with BPS that appellate courts do not generally consider arguments and theories raised for the first time on appeal, see *Bedore v. Ranch Oil Co.*, 282 Neb. 553, 805 N.W.2d 68 (2011), and that an issue not presented to or decided by the trial court is not an appropriate issue for consideration on appeal, see *DMK Biodiesel v. McCoy*, 285 Neb. 974, 830 N.W.2d 490 (2013). However, as previously noted, O'Brien's complaint did allege "wrongful discharge in violation of public policy including, but not limited to, the right to be free from retaliatory discharge for reporting violations of state and federal regulations pertaining to the demolition and disposal of asbestos and asbestos containing materials." So while violations of federal regulations were generally pled, there is nothing in the record before us to indicate whether the specific federal statutes raised in O'Brien's brief on appeal were considered by the district court. We further note that

while O'Brien briefly quotes from three federal statutes, he does not discuss them or provide any analysis of why he contends they support the creation of a public policy exception to the at-will employment doctrine in Nebraska. Nevertheless, for the sake of completeness under our plain error review of the public policy exception to at-will employment, we have reviewed the federal statutes to determine whether they apply to the reporting of the presence of asbestos or in any way support a clear mandate of public policy related to the reporting of the presence of asbestos. We find that they do not.

The first federal statute cited to by O'Brien comes from the Asbestos Hazard Emergency Response Act (the Act), 15 U.S.C. § 2641 et seq. (2012). The specific provision cited by O'Brien states that schools may not "discriminate against a person in any way, including firing a person who is an employee, because the person provided information relating to *a potential violation of this title* [15 USCS § 2641 et seq.] to any other person, including a State or the Federal Government." 15 U.S.C. § 2651(a) (emphasis supplied). We note that the statute also provides that an employee who believes he has been fired for providing information related to a potential violation may apply for a review of the firing within 90 days after it occurs. 15 U.S.C. § 2651(b). There is nothing in the record before us to indicate that O'Brien sought any relief under this statute, and we observe that the statute also calls for the reporting of a potential violation of the Act, not the reporting of the presence of asbestos. The Act calls for the establishment of federal regulations for inspections related to asbestos-containing material and for the implementation of appropriate response actions with respect to such materials in schools in a safe and complete manner, periodic reinspection of school buildings following response actions, and a study to determine the extent of danger to human health posed by asbestos in public and commercial buildings. 15 U.S.C. § 2641. The Act directs schools to develop and implement an operation and maintenance plan with respect to friable asbestos-containing material in a school building, see 15 U.S.C. § 2644(c), and civil penalties can be assessed for violations under the Act, see 15 U.S.C. § 2647. The Act also allows for any citizen to file a complaint with the school or the governor of the state in which the school building is located with respect to asbestos-containing material in a school building, 15 U.S.C. § 2647. The Act presumes the presence of asbestos, as its purpose is to work toward the safe removal of asbestos from schools. There is nothing in the Act to indicate that simply reporting the presence of asbestos falls under the Act. We also note that there are civil, not criminal, penalties when schools fail to comply with the directions provided under the Act for addressing asbestos and its disposal in the schools.

The next two federal statutory provisions cited by O'Brien contain similar language, so will be discussed together after a brief summary of each statute. The first of these two provisions falls within the Asbestos School Hazard Abatement Act, 20 U.S.C. § 4011 et seq. (2012). The purpose of the Asbestos School Hazard Abatement Act is to establish a program to assist states and schools to ascertain the extent of the danger to school children and employees from asbestos materials in schools, to provide continuing scientific and technical assistance in identifying and abating asbestos hazards in schools, to provide financial assistance for the abatement of asbestos threats to school children or employees, and to ensure that no employee suffers disciplinary action for calling attention to *potential asbestos hazards* which may exist in schools. 20 U.S.C. § 4011(b). The Asbestos School Hazard Abatement Act further states:

No State or local educational agency receiving assistance under this title [20 USCS § 4011 et seq.] may discharge any employee or otherwise discriminate against any employee with respect to the employee's compensation, terms, conditions, or privileges of employment because the employee has *brought to the attention of the public information concerning any asbestos problem* in the school buildings within the jurisdiction of such agency.

20 U.S.C. § 4018 (emphasis supplied).

The other federal statutory provision cited by O'Brien, 20 U.S.C. § 3601(b)(5), falls within the Asbestos School Hazard Detection and Control Act, 20 U.S.C. § 3601 et seq. (2012). The purpose of the Asbestos School Hazard Detection and Control Act is to direct the Secretary of Education to establish a task force to assist states and schools to ascertain the extent of danger to school children and employees from asbestos materials in schools; to provide information and scientific, technical, and financial assistance to schools to identify asbestos hazards in schools; to provide loans for the mitigation of asbestos hazards; and to "[en]sure that no employee of any local educational agency suffers any disciplinary action as a result of calling attention to *potential asbestos hazards* which may exist in schools." 20 U.S.C. § 3601(b). The Asbestos School Hazard Detection and Control Act also provides that school employees shall not be discriminated against because they "*brought to the attention of the public information concerning any asbestos problem* in the school buildings within the jurisdiction of such agency." 20 U.S.C. § 3608 (emphasis supplied).

As to both the Asbestos School Hazard Abatement Act, 20 U.S.C. § 4011 et seq., and the Asbestos School Hazard Detection and Control Act, 20 U.S.C. § 3601 et seq., discussed above, there is no evidence in the record that O'Brien called attention to any potential asbestos hazards or that he brought to the attention of the public any information related to asbestos problems at BPS. Rather, O'Brien reported the suspected presence of asbestos to his employer, as he was required to do. O'Brien does not discuss in his brief why any of these federal statutes create a basis for a public policy exception to the at-will employment doctrine in Nebraska, and after our review of these federal acts, we find them to be inapplicable to the facts before us.

Further, O'Brien's reliance on *Ambroz v. Cornhusker Square Ltd.*, 226 Neb. 899, 416 N.W.2d 510 (1987), is misplaced. In that case, an employee was terminated from his job when he refused to take a polygraph test requested by his employer. Nebraska law specifically prohibited an employer from making submission to a polygraph test a condition of employment; accordingly, the Nebraska Supreme Court found that the discharge was a violation of a clear, statutorily mandated public policy. The federal statutes upon which O'Brien relies do not protect school employees from being discharged from employment merely for reporting the presence of asbestos; rather, those statutes are designed to protect the reporting of potential asbestos hazards or reporting to the public any information about asbestos problems in a school. There is no evidence in this record that O'Brien did either. Whether or not those federal statutes would otherwise provide a basis for a public policy exception to the at-will employment doctrine in cases where employment termination resulted from the reporting of actual or potential asbestos hazards or violations is not a question we need to answer in the case before us, and we decline to do so.

In summary, we keep in mind that the right of an employer to terminate at-will employees should be restricted only by exceptions created by statute or to those instances where a very clear mandate of public policy has been violated. *Ambroz v. Cornhusker Square Ltd., supra.* Based on our plain error review of the record before us, we find there is no exception to the at-will employment doctrine created by statute or any clear mandate of public policy for an employee reporting the presence of asbestos in the workplace. Accordingly, an action for wrongful discharge is not available to O'Brien, and summary judgment dismissing the action was appropriate.

*Reasons for Employment Termination.*

O'Brien also argues that summary judgment was not proper because the "close proximity between BPS's termination of O'Brien and O'Brien's reports" creates a genuine issue of material fact as to "whether BPS's reason for termination was pretextual." Brief for appellant at 14. The matter of "pretextual reasons" is considered in a retaliatory discharge case when a court engages in a three-tiered allocation of proof standard: (1) plaintiff has the burden of proving a prima facie case of discrimination; (2) if plaintiff meets that initial burden, then the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for discharging the employee; and (3) if the employer meets its burden, then the employee has the burden of proving the stated reasons were pretextual and not the true reason for the employer's decision. See *Riesen v. Irwin Indus. Tool Co.*, 272 Neb. 41, 717 N.W.2d 907 (2006). O'Brien asserts that a material fact exists as to whether BPS' stated reasons for termination were pretextual. However, we do not consider the evidence in this record under the three-tiered allocation of proof standard for retaliatory discharge, because we have concluded that a wrongful discharge exception to the at-will employment doctrine is not available in this case. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Pittman v. Western Engineering Co.*, 283 Neb. 913, 813 N.W.2d 487 (2012).

Since we have concluded that no public policy exception to the at-will employment doctrine is available to an employee reporting the presence of asbestos in the workplace, then as discussed above, O'Brien's employment termination falls under the employment at-will doctrine. Accordingly, there was no error by the district court in entering summary judgment favoring BPS based on its conclusion that O'Brien was terminated from his position for legitimate reasons related to his inability to cooperate with supervisors, inefficient work performance, and lack of punctuality.

CONCLUSION

We conclude that no statutory or public policy exception to the at-will employment doctrine exists for an employee reporting the presence of asbestos in a workplace, and we affirm the district court's order granting summary judgment in favor of BPS and dismissing O'Brien's complaint.

AFFIRMED.