ARMEDA MALONE, APPELLANT, V. AMERICAN BUSINESS
INFORMATION, A CORPORATION, APPELLEE.
634 N.W.2d 788

Filed October 26, 2001.   No. S-00-571.

Michael P. Dowd, of Dowd & Dowd, for appellant.

Patrick M. Flood and Andrew J. Wilson, of Hotz, Weaver, Flood & Breitkreutz, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

This is an appeal from an order of the district court for Douglas County dismissing an action for wrongful discharge filed by Armeda Malone against American Business Information (ABI), her former employer. The sole issue presented is whether Malone stated a cause of action by alleging that her employment was terminated after she asserted a claim cognizable under the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. §§ 48-1228 to 48-1232 (Reissue 1998). The district court resolved this issue against Malone. We find no error and therefore affirm.

## BACKGROUND

In her petition, Malone alleged she was employed by ABI as a national account manager under an employment agreement which included a sales/wage commission plan. Malone further alleged she was entitled to commissions in the amount of $94,877.81 under the plan which ABI failed and refused to pay within 30 days from the date due. Malone alleged she made both verbal and written claims to ABI for her unpaid wages and that due to the assertion of such claims, her employment was terminated. Malone specifically alleged that her demand for payment of wages to which she was lawfully entitled under the Nebraska Wage Payment and Collection Act resulted in the termination of her employment in violation of public policy. She prayed for damages in the form of mental pain and suffering and present and future lost wages.

ABI filed a general demurrer asserting that the petition did not state facts sufficient to constitute a cause of action. The district court sustained the demurrer, reasoning that Malone was an at-will employee and that the facts she alleged did not fall within a public policy exception to the at-will employment doctrine. Although given an opportunity to amend, Malone elected to stand on her petition, and the district court entered an order of dismissal. Malone then perfected this timely appeal which we removed to our docket on our own motion pursuant to our authority to regulate the dockets of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENT OF ERROR

Malone assigns, restated and summarized, that the district court erred in failing to find that her petition stated a cause of

action for wrongful termination pursuant to the public policy exception to the at-will employment doctrine.

## STANDARD OF REVIEW

In considering a demurrer, a court must assume that the facts pled, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of facts not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *Hagan v. Upper Republican NRD*, 261 Neb. 312, 622 N.W.2d 627 (2001); *Tilt-Up Concrete v. Star City/Federal*, 261 Neb. 64, 621 N.W.2d 502 (2001).

In determining whether a cause of action has been stated, the petition is to be construed liberally. If as so construed the petition states a cause of action, a demurrer based on the failure to state a cause of action must be overruled. *J.B. Contracting Servs. v. Universal Surety Co.*, 261 Neb. 586, 624 N.W.2d 13 (2001). Whether a petition states a cause of action is a question of law, regarding which an appellate court has an obligation to reach a conclusion independent of that of the inferior court. *Hamilton v. Foster*, 260 Neb. 887, 620 N.W.2d 103 (2000); *Drake v. Drake*, 260 Neb. 530, 618 N.W.2d 650 (2000).

## ANALYSIS

Although Malone alleged that she was employed by ABI pursuant to an "employment agreement" which included a sales/wage commission plan, there is no allegation that the agreement contemplated employment for a specific duration. Malone concedes in her brief that she was an at-will employee. The clear and oft-cited rule in Nebraska is that unless constitutionally, statutorily, or contractually prohibited, an employer, without incurring liability, may terminate an at-will employee at any time with or without reason. *Huff v. Swartz*, 258 Neb. 820, 606 N.W.2d 461 (2000). Malone contends that she has nevertheless stated a cause of action because she alleged facts falling within the public policy exception to the at-will employment rule.

We first recognized, without adopting, the public policy exception to the at-will employment doctrine in *Mau v. Omaha Nat. Bank*, 207 Neb. 308, 299 N.W.2d 147 (1980), *disapproved*

*on other grounds, Johnston v. Panhandle Co-op Assn.*, 225 Neb. 732, 408 N.W.2d 261 (1987). In *Mau*, we noted that other jurisdictions had adopted a rule that allows an at-will employee to claim damages for wrongful discharge "when the motivation for the firing contravenes public policy." 207 Neb. at 316, 299 N.W.2d at 151.

We first applied the public policy exception in *Ambroz v. Cornhusker Square Ltd.*, 226 Neb. 899, 416 N.W.2d 510 (1987). The issue presented in that case was whether an at-will employee had stated a cause of action for wrongful discharge by alleging that his employment was terminated because he refused to submit to a polygraph examination. Although we recognized the general rule that in the absence of contractual or statutory restrictions, an employer could discharge an at-will employee for any reason without incurring liability, we determined that an exception to the rule was created by Neb. Rev. Stat. § 81-1932 (Reissue 1999), which provides in part that " '[n]o employer or prospective employer may require as a condition of employment or as a condition for continued employment that a person submit to a truth and deception examination . . . .' " *Ambroz*, 226 Neb. at 900-01, 416 N.W.2d at 512. The statute further provides that any person who violates its provisions is guilty of a Class II misdemeanor. We held that these statutory provisions constituted a "pronouncement of public policy on the issue of wrongful discharge" in language which clearly and unambiguously prohibited the employer's use of a polygraph to deny employment. *Id.* at 903, 416 N.W.2d at 513. We concluded by defining the circumstances in which the public policy exception would be recognized, stating:

> This is a case involving a discharge in violation of a clear, statutorily mandated public policy. We believe that it is important that abusive discharge claims of employees at will be limited to manageable and clear standards. The right of an employer to terminate employees at will should be restricted only by exceptions created by statute or to those instances where a very clear mandate of public policy has been violated. This case falls within that rule.

*Id.* at 905, 416 N.W.2d at 515.

We next considered the public policy exception in *Schriner v. Meginnis Ford Co.*, 228 Neb. 85, 421 N.W.2d 755 (1988), wherein

an employee claimed that he was wrongfully discharged for reporting his suspicions that his employer was violating state odometer fraud laws. In addressing the employee's claim, we cited our recognition of the public policy exception in *Mau* and our holding in *Ambroz*. We distinguished the case from *Ambroz* in that there was no statute which prohibited an employer from discharging an employee who reported suspected criminal activity. We further noted that the case was distinguishable from those in other jurisdictions where an employee was discharged for refusing to directly engage in criminal conduct. Notwithstanding those distinctions, however, we recognized that the Legislature had made it unlawful to engage in odometer fraud and had made such conduct a Class IV felony under Neb. Rev. Stat. § 60-2301 et seq. (Reissue 1984 & Cum. Supp. 1986) (now found at Neb. Rev. Stat. § 60-132 et seq. (Reissue 1998)). In view of this legislative action, we noted that we were not being asked to declare new public policy, but, rather, were presented with the issue of

> whether, by virtue of the enactment of §§ 60-2301 et seq., there exists such a clear declaration by the Legislature of important public policy as to warrant a judicial determination that the policy is to be enforced by recognizing a cause of action for wrongful discharge under appropriate facts.

*Schriner*, 228 Neb. at 91, 421 N.W.2d at 759. In addressing this issue, we reasoned that there is no public policy more basic than the enforcement of a state's criminal code and concluded that the enactment of the criminal statute was a clear declaration of public policy against odometer fraud. Finding, however, that an action for wrongful discharge could lie only when the employee acts in good faith in reporting a violation of the criminal code, we declined to apply the exception and affirmed summary judgment for the employer because there was no evidence that the employee had reasonable cause to believe that the employer had acted unlawfully or that he had acted in good faith in so reporting.

The most recent Nebraska case to address the public policy exception is *Simonsen v. Hendricks Sodding & Landscaping*, 5 Neb. App. 263, 558 N.W.2d 825 (1997). In that case, an at-will employee alleged that he was wrongfully discharged for refusing an order to drive a truck that had defective brakes. Based upon *Ambroz v. Cornhusker Square Ltd.*, 226 Neb. 899, 416 N.W.2d 510

(1987), and *Schriner, supra*, the Court of Appeals concluded that "the law in Nebraska is that an at-will employee has a cause of action for wrongful discharge against his or her former employer if the employee was discharged in violation of a contractual right or a statutory restriction or when the motivation for the discharge contravenes public policy." *Simonsen*, 5 Neb. App. at 269, 558 N.W.2d 829. The Court of Appeals determined that by making the operation of a motor vehicle with defective brakes a misdemeanor under Nebraska law, the Legislature had declared that such conduct was contrary to public policy. The Court of Appeals concluded that discharging an employee for refusal to commit a criminal act would contravene public policy and give rise to a wrongful discharge action under the public policy exception.

The Nebraska Wage Payment and Collection Act, codified at §§ 48-1228 to 48-1232, obligates an employer to "pay all wages due its employees on regular days designated by the employer or agreed upon by the employer and employee." § 48-1230. The act places certain restrictions upon the employer's right to deduct, withhold, or divert a portion of an employee's wages, and specifies when unpaid wages are due following an employee's separation from the payroll. *Id.* The act also permits an employee to bring suit on a claim for wages which are not paid in a timely fashion and, if successful in prosecuting such a claim, to recover attorney fees. § 48-1231. In such an action, an amount equal to the unpaid wages, or an amount equal to two times the unpaid wages in the event of willful nonpayment, may be recovered and placed in a fund distributed to the common schools of this state. § 48-1232.

Unlike the Licensing of Truth and Deception Examiner's Act which formed the basis of our decision in *Ambroz*, the Wage Payment and Collection Act does not contain a specific provision restricting an employer's right to discharge an at-will employee. Nor does the act impose any criminal sanctions, thus distinguishing it from the basis for the public policy exception recognized in *Schriner v. Meginnis Ford Co.*, 228 Neb. 85, 421 N.W.2d 755 (1988), and *Simonsen, supra*. Thus, none of these cases provide direct support for Malone's contention that the Wage Payment and Collection Act forms the basis for recognition of a public policy exception to the doctrine of employment at will under the facts alleged.

Due to variations in statutory language, cases from other jurisdictions provide little guidance. In *Tullis v. Merrill*, 584 N.W.2d 236 (Iowa 1998), the Iowa Supreme Court held that an at-will employee who was terminated after seeking reimbursement of amounts withheld from his paycheck could bring an action for wrongful discharge based upon a provision of Iowa's wage payment collection act which prohibited an employer from discharging an employee because of the employee's assertion of a claim under the act. As noted, the Nebraska act contains no such provision. In *Phillips v. Gemini Moving Specialists*, 63 Cal. App. 4th 563, 74 Cal. Rptr. 2d 29 (1998), the court held that an employee who had been discharged during a dispute with his employer regarding payroll deductions could state a claim for retaliatory discharge, reasoning that the State of California had a fundamental public policy favoring prompt payment of wages based in part upon a statute which made an employer's willful nonpayment of wages a misdemeanor offense. Nebraska's act contains no such provision. Although the Illinois Wage Payment and Collection Act does contain a similar provision, see 820 Ill. Comp. Stat. Ann. 115/14(c) (Lexis 1999), the court in *McGrath v. CCC Information Services, Inc.*, 314 Ill. App. 3d 431, 731 N.E.2d 384, 246 Ill. Dec. 856 (2000), reached the opposite result. Reasoning that "[to] constitute a clearly mandated public policy exception that would justify application of the tort of retaliatory discharge, the matter at issue must strike at the heart of a citizen's social rights, duties, and responsibilities," the court concluded that "the effect of plaintiff's dispute and subsequent termination on the citizenry collectively is incidental at best" and that "[m]erely citing a constitutional or statutory provision in a complaint will not give rise to a retaliatory discharge cause of action." *Id.* at 440, 731 N.E.2d at 391, 246 Ill. Dec. at 863.

As did the district court, we conclude as a matter of law that the Nebraska Wage Payment and Collection Act does not represent a "very clear mandate of public policy" which would warrant recognition of an exception to the employment-at-will doctrine based on the facts alleged by Malone. See *Ambroz v. Cornhusker Square Ltd.*, 226 Neb. 899, 416 N.W.2d 510 (1987). The act is primarily remedial in nature, providing specific procedures for the enforcement of substantive rights to compensation for work

performed which arise not from the statute but from the employment relationship itself. The act specifically contemplates payment of wages which become due both during the employment relationship and after it has been terminated. See § 48-1230. As noted above, the act contains no criminal penalties nor any specific provision restricting the employer's common-law right to discharge an at-will employee. Thus, while the act provides Malone with a remedy to collect any compensation which ABI may owe her, it does not "declare . . . an important public policy with such clarity as to provide a basis for a civil action for wrongful discharge." See *Schriner v. Meginnis Ford Co.*, 228 Neb. 85, 89, 421 N.W.2d 755, 757 (1988).

## CONCLUSION

For the reasons discussed, we conclude that Malone's petition does not allege facts sufficient to constitute a cause of action. The district court therefore did not err in sustaining ABI's demurrer or in ultimately dismissing the action.

AFFIRMED.