Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/18/2022 09:06 AM CST

Natasha Carrizales, individually and on behalf of
Nina Carrizales, a minor, as her guardian and next
friend, and Nina Carrizales, by and through her
mother, guardian, and next friend, Natasha
Carrizales, appellants, v. Creighton Saint
Joseph Regional Healthcare System,
LLC, et al., appellees.

___ N.W.2d ___

Filed August 26, 2022.    No. S-21-150.

1. **Judgments: Jurisdiction: Appeal and Error.** The question of jurisdiction is a question of law, upon which an appellate court reaches a conclusion independent of the trial court; however, findings of the lower court as to underlying factual disputes, if any, in regard to the jurisdictional issue will be upheld unless they are clearly erroneous.
2. **Limitations of Actions: Dismissal and Nonsuit.** Neb. Rev. Stat. § 25-217 (Reissue 2016) is self-executing, so that an action is dismissed by operation of law, without any action by either the defendant or the court, as to any defendant who is named in the action and not served with process within the time set forth in the statute.
3. **Limitations of Actions: Dismissal and Nonsuit: Jurisdiction.** After dismissal of an action by operation of law under Neb. Rev. Stat. § 25-217 (Reissue 2016), there is no longer an action pending and the district court has no jurisdiction to make any further orders except to formalize the dismissal.
4. **Evidence: Appeal and Error.** Generally, the control of discovery is a matter for judicial discretion, and decisions regarding discovery will be upheld on appeal in the absence of an abuse of discretion.
5. **Appeal and Error.** Appellate review of a district court's use of inherent power is for an abuse of discretion.
6. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or

unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

7. **Courts.** Nebraska courts, through their inherent judicial power, have the authority to do all things necessary for the proper administration of justice.

8. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

9. ____: ____. An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.

10. **Summary Judgment: Malpractice: Physicians and Surgeons: Affidavits: Proof.** At the summary judgment stage, it is well settled that a physician's self-supporting affidavit suffices to make a prima facie case that the physician did not commit medical malpractice.

11. **Expert Witnesses.** A court should not admit expert testimony if it appears the witness does not possess facts that will enable him or her to express an accurate conclusion, as distinguished from a mere guess or conjecture.

Appeal from the District Court for Douglas County: James T. Gleason, Judge. Affirmed.

Theodore R. Boecker, Jr., of Boecker Law, P.C., L.L.O., for appellants.

Joseph S. Daly and Mary M. Schott, of Evans & Dixon, L.L.C., for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

Natasha Carrizales, individually and on behalf of her minor daughter, Nina Carrizales (individually and collectively Carrizales), brought a medical malpractice action alleging negligence during Nina's birth. The district court found that one

defendant was dismissed by operation of law as a result of Carrizales' failure to timely serve it. The district court granted summary judgment in favor of the remaining defendants after granting a motion to strike Carrizales' expert witness. Carrizales appeals these rulings. Finding no error, we affirm.

## I. BACKGROUND

Carrizales filed her lawsuit on October 30, 2013. In her complaint, Carrizales alleged that on October 30, 2011, she was admitted to an Omaha, Nebraska, hospital and that she gave birth to her daughter that day. Carrizales also alleged that various doctors responsible for her and her daughter's care negligently failed to respond to signs of fetal distress and that, as a result, her daughter was born with severe disabilities, which will reduce her life expectancy and require extended medical attention throughout the course of her life.

Among the defendants named in the lawsuit were Creighton University Medical Center-Saint Joseph Hospital (Creighton University Medical Center) and Creighton University. Carrizales alleged that Creighton University Medical Center operated the hospital at which the birth took place and that Creighton University employed or granted privileges to practice medicine at the hospital to several individual defendants. The individuals named as defendants included three doctors: Caron J. Gray, Nicholas L. Wulf, and Richard G. Arms III (collectively the doctors). Carrizales alleged that the doctors provided care and treatment to Carrizales and her daughter during the course of Carrizales' hospital stay.

At issue in this appeal is the district court's disposition of Carrizales' claims against Creighton University and the doctors. Carrizales filed a motion for default judgment against Creighton University, alleging that it had failed to respond to the complaint. The district court concluded, however, that because Carrizales failed to serve Creighton University within the deadline provided at the time in Neb. Rev. Stat. § 25-217 (Reissue 2016), Creighton University was dismissed by operation of

law. The district court granted summary judgment in favor of the doctors after entering an order striking Carrizales' expert witness. The district court also denied Carrizales' motion to alter or amend. Additional background regarding these issues is provided in the analysis section below.

## II. ASSIGNMENTS OF ERROR

Carrizales assigns, condensed and restated, that the district court erred (1) in finding that Creighton University was dismissed by operation of law under § 25-217, (2) in failing to grant her motion for default judgment against Creighton University, (3) in striking her expert witness, (4) in granting the doctors' motion for summary judgment, and (5) in denying her motion to alter or amend.

## III. ANALYSIS

### 1. Dismissal of Creighton University

#### (a) Background

As noted above, Carrizales filed her lawsuit on October 30, 2013. On October 31, Carrizales filed a praecipe for a summons to be served on Creighton University, in care of its registered agent, James S. Jansen, by certified mail. The clerk of the district court issued the summons the same day consistent with the instructions of the praecipe. The summons was No. 226226. There is no dispute that Carrizales did not immediately serve this summons.

Months later, on April 16, 2014, Carrizales filed a second praecipe to issue a summons. Like the October 2013 praecipe, it requested a summons to be served on Creighton University, in care of its registered agent, Jansen, by certified mail. Later the same day, the clerk of the court issued a summons. The summons, however, listed the party to be served as Creighton University Medical Center. This second summons was No. 255379.

Carrizales filed a service return in the district court on April 28, 2014. The service return listed the No. 226226 summons

in the upper right-hand corner. It indicated that copies of the summons were sent by certified mail to "Creighton University Medical Center" care of "James S. Jansen, RA" on April 17. An accompanying return receipt showed the certified mail was received April 21.

Over 4 years later, in July 2018, Carrizales filed a motion asking the district court to enter a default judgment against Creighton University. It alleged that Creighton University had been served with the summons, but had not responded to the complaint. At the hearing on Carrizales' motion for default judgment, Creighton University argued that a default judgment should not be entered against it, because it was not obligated to respond to Carrizales' complaint. Creighton University argued that it was not obligated to respond because Carrizales either served the wrong party or served the October 2013 summons after it expired.

In support of the motion for default judgment, Carrizales offered an affidavit signed by her counsel. That affidavit stated that Carrizales "filed a Praecipe for issuance of Summons and Complaint upon Creighton University" on April 14, 2014. It also stated that "[w]ithin ten days of the issuance of the Summons by the Clerk, [Carrizales] caused a Summons to be issued and said Summons was served via certified mail . . . . A copy of the Summons and Complaint are attached as Exhibit 2." The attached exhibit 2 was a copy of summons No. 255379, dated April 16, 2014. The affidavit also stated that "[s]ervice was accomplished upon Creighton University by delivery of a Summons and Complaint upon its registered agent . . . on or about April 21, 2014, as reflected in the return of service, a copy of which is attached hereto as Exhibit 6." The attached exhibit 6 is a copy of the service return that was filed with the district court, which lists No. 226226 in the upper right-hand corner.

The district court entered a written order in December 2020, addressing Carrizales' motion for default judgment. In the order, the district court observed that the service return

Carrizales filed listed the document number associated with the summons issued in October 2013. The district court found that the October 2013 summons was not delivered until April 2014 and was thus not sent within 10 days of issuance as required by Neb. Rev. Stat. § 25-505.01(1)(c) (Reissue 2016). Based on this determination, the district court concluded that Carrizales failed to serve Creighton University within 6 months of the filing of her lawsuit and that, under § 25-217, the action against Creighton University was thus dismissed without prejudice by operation of law.

### (b) Standard of Review

[1] By finding that Carrizales' claims against Creighton University were dismissed by operation of law, the district court concluded it lacked subject matter jurisdiction over those claims. See, *Stone Land & Livestock Co. v. HBE*, 309 Neb. 970, 962 N.W.2d 903 (2021); *Kovar v. Habrock*, 261 Neb. 337, 622 N.W.2d 688 (2001). The question of jurisdiction is a question of law, upon which an appellate court reaches a conclusion independent of the trial court; however, findings of the lower court as to underlying factual disputes, if any, in regard to the jurisdictional issue will be upheld unless they are clearly erroneous. *Walksalong v. Mackey*, 250 Neb. 202, 549 N.W.2d 384 (1996).

### (c) Analysis

Carrizales argues that rather than finding that Creighton University was dismissed by operation of law, the district court should have entered a default judgment against it. We focus our attention on the district court's determination that Creighton University was dismissed by operation of law. If that determination is correct, the district court obviously did not err by declining to enter a default judgment against Creighton University.

Carrizales makes both factual and legal arguments in contending that the district court erred by finding that Creighton University was dismissed by operation of law pursuant to

§ 25-217. She argues that the district court erred by making the factual finding that the summons that Carrizales served in April 2014 was the summons that was issued in October 2013. Alternatively, she argues that even if she served the summons issued in October 2013 in April 2014, the district court erred by finding as a matter of law that § 25-217 applied.

We will address Carrizales' factual argument first. Carrizales argues that her counsel's affidavit established that the summons served in April 2014 was the summons issued earlier that month and that there is no evidence to the contrary. We disagree with Carrizales that her counsel's affidavit conclusively established that the summons served in April 2014 was the summons issued that month. Carrizales' counsel clearly averred that he served "a Summons" in April 2014, but it is not clear to us from the face of the affidavit that he was averring that he served the summons the clerk had issued earlier that month. Furthermore, as noted above, Carrizales' counsel averred in the affidavit that service of "a Summons" was accomplished in April 2014 "as reflected in the return of service." The service return, however, listed the document number corresponding to the summons issued in October 2013. We also note that while counsel for Carrizales expressed a belief at oral argument that the summons served in April 2014 was the summons issued in April 2014, he also acknowledged "some chance" that it was actually the summons issued in October 2013 that was served in April 2014. Given the evidence before the district court, we do not find that its determination that Carrizales served the summons issued in October 2013 was clearly erroneous.

Having found no grounds to reverse the district court's decision based on its factual determination, we turn to Carrizales' legal argument. Here, Carrizales argues that even if the summons served on Creighton University was not served within 10 days of issuance as required by § 25-505.01(1)(c), she nonetheless "served" Creighton University within the deadline set by § 25-217. She also argues that if Creighton University

had some objection to the summons or service of process, it was obligated to file a motion under Neb. Ct. R. Pldg. § 6-1112(b)(4) or (5). By not filing such a motion, she argues, Creighton University waived any objection to the service it received.

At the time Carrizales filed her complaint, § 25-217 provided that an action "shall stand dismissed without prejudice as to any defendant not served within six months from the date the complaint was filed." Carrizales' argument requires us to determine what a plaintiff must do in order for a defendant to be "served" for purposes of the version of § 25-217 in effect at the time the complaint was filed in this case. On this point, Carrizales suggested at oral argument that a defendant is "served" for purposes of § 25-217 when it actually receives a copy of the summons and complaint pursuant to a method of service authorized by statute. In Carrizales' view then, Creighton University was "served" because service by certified mail is authorized by statute and it actually received a copy of the complaint with a summons, albeit an expired one. We are not persuaded by this argument.

A similar question was at issue in *State Farm Mut. Auto Ins. Co. v. Allstate Ins. Co.*, 268 Neb. 439, 684 N.W.2d 14 (2004). There, we had to determine when service for purposes of § 25-217 occurred in a situation in which a plaintiff attempted to serve a defendant by publication. We considered § 25-217 in pari materia with Neb. Rev. Stat. § 25-519 (Reissue 2016), the statute directing how service by publication is to be accomplished, and concluded that the defendant was not served under § 25-217 until the publication had been printed in a newspaper in 3 successive weeks, as required by § 25-519.

In line with *State Farm Mut. Auto Ins. Co., supra*, we believe it appropriate in this case to consider § 25-217 in pari materia with § 25-505.01(1)(c). The latter statute directs how service by certified mail is to be accomplished—by sending the summons to the defendant by certified mail "within

ten days of issuance." *Id.* In this case, however, the district court found that Carrizales failed to send a summons to Creighton University within 10 days of its issuance, and, as we have stated, that finding was not clearly erroneous. Because Carrizales failed to follow the statute that directs how certified mail service is to be accomplished, we find that Creighton University was not served for purposes of § 25-217.

[2,3] We likewise find no merit to Carrizales' argument that without a motion from Creighton University under § 6-1112(b)(4) or (5) of the rules of pleading, the district court could not find that the claim against Creighton University was dismissed by operation of law pursuant to § 25-217. As we have explained on many occasions, § 25-217 is self-executing, so that an action is dismissed by operation of law, without any action by either the defendant or the court, as to any defendant who is named in the action and not served with process within the time set forth in the statute. See *Davis v. Choctaw Constr.*, 280 Neb. 714, 789 N.W.2d 698 (2010). After dismissal of an action by operation of law under § 25-217, there is no longer an action pending and the district court has no jurisdiction to make any further orders except to formalize the dismissal. *Davis, supra.* That is what the district court did here with respect to Creighton University, and for reasons we have explained, we find that was not erroneous.

## 2. Striking of Expert Witness

### (a) Background

In September 2017, after this case had been pending for nearly 4 years, the doctors filed a motion requesting that the district court enter an order striking Dr. Fred Duboe as an expert witness for Carrizales. In the motion to strike, the doctors asserted that after Carrizales designated Duboe, a physician based in Illinois, as an expert witness in August 2015, their counsel contacted counsel for Carrizales on several occasions between March 2016 and August 2017. The motion claimed that the doctors' counsel asked that Carrizales' counsel

provide dates on which Duboe could be deposed, but that no deposition was ever scheduled.

In response to the doctors' September 2017 motion to strike, the district court issued an order on February 22, 2018. The order did not grant the motion to strike, but directed that Carrizales "shall within 14 days from the date hereof find and determine dates upon which [Duboe] can be available for deposition, which dates must be reasonably agreeable to [the doctors]." It also provided that "[s]aid deposition must be taken and concluded within two months from the date hereof." The order expressly warned that if "said deposition is not completed within two months from the date hereof, the Court will strike [Duboe] as an expert witness."

On May 3, 2018, the doctors filed another motion to strike Duboe as an expert witness, asserting that Duboe's deposition had not been taken and dates had not been identified for such a deposition. At the hearing on this motion to strike, the doctors offered and the district court received copies of correspondence exchanged by counsel for the doctors, Carrizales, and Creighton University Medical Center after the district court's order on the initial motion to strike. The correspondence included a letter from counsel for the doctors dated February 23, 2018, identifying several dates in March and April on which he would not be available for a deposition; a copy of an email dated March 8, 2018, from Carrizales' counsel in which he asked the other attorneys if they would be available on April 23 to 25 for a deposition of Duboe and advised that there were limited days on which both he and counsel for the doctors were available; an email dated March 9, 2018, from Carrizales' counsel stating that he was also available for a deposition of Duboe on April 11; an email dated March 9, 2018, from counsel for the doctors saying that he would be available on April 23 and 24, but not April 11; and an email dated March 13, 2018, from counsel for Creighton University Medical Center stating that she was available for a deposition on April 23 and 24.

The district court also received at the hearing an affidavit from Carrizales' counsel. In the affidavit, he stated that by the time April 23 and 24, 2018, were identified as feasible dates for defense counsel, Duboe advised counsel for Carrizales that he was no longer available on those dates. Counsel for Carrizales also stated in his affidavit that while the first motion to strike, filed in September 2017, was pending, he sent an email to defense counsel indicating that Duboe would be available for a deposition on October 10, but that counsel for the doctors replied that he wanted to "wait and see what happens" at the hearing on the motion to strike.

The district court entered an order granting the motion to strike Duboe as an expert witness.

### (b) Standard of Review

[4-6] Generally, the control of discovery is a matter for judicial discretion, and decisions regarding discovery will be upheld on appeal in the absence of an abuse of discretion. *Putnam v. Scherbring*, 297 Neb. 868, 902 N.W.2d 140 (2017). Similarly, appellate review of a district court's use of inherent power is for an abuse of discretion. *Id.* An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

### (c) Analysis

Carrizales contends that the district court erred by striking Duboe as an expert witness. She first argues that the district court could not strike Duboe's testimony because the doctors never served a notice of deposition or subpoena upon him. Alternatively, she argues that the district court's order striking Duboe was unduly harsh.

We begin by addressing Carrizales' argument that the district court could not strike Duboe's testimony because the doctors did not serve a notice of deposition or subpoena upon him. In support of this argument, Carrizales points to

decisions in which courts have held that sanctions cannot be imposed under provisions analogous to Neb. Ct. R. Disc. § 6-337 (Rule 37) for a deponent's nonappearance at a deposition if the deponent was not compelled to appear by a proper subpoena. See, e.g., *Laws v. Louisville Ladder, Inc.*, 146 So. 3d 380 (Miss. App. 2014). We find those cases inapposite, because, as we will explain, we disagree that the district court order striking Duboe's testimony was issued as a Rule 37 sanction.

[7] Rule 37 provides "a range of sanctions" that a court may impose for specific violations of discovery rules. See John P. Lenich, Nebraska Civil Procedure, § 28:2 at 1199 (2022). In this case, Carrizales does not appear to have committed any of those violations. But Rule 37 sanctions are not the only tool trial courts have to manage discovery. Nebraska courts, through their inherent judicial power, have the authority to do all things necessary for the proper administration of justice. *Putnam, supra*. We have recognized that this inherent power authorizes trial courts to issue and enforce progression orders related to discovery. See *id.* Indeed, we have noted that trial courts are encouraged to issue and enforce such orders in order to meet case progression standards adopted by this court and that members of the bar are responsible for cooperating with the judiciary in attempting to meet these standards. See *id.*, citing Neb. Ct. R. § 6-101(B)(5) and (C) (rev. 2013).

We understand the district court's February 22, 2018, order to have been a type of progression order—it ordered deadlines by which the parties were to identify dates for Duboe's deposition and by which the deposition was to be completed. It also specified that if the deposition was not completed by the deadline, Duboe would not be permitted to testify. We understand the district court to have enforced that order when it issued its subsequent order striking Duboe's testimony.

The fact that the district court's orders concerning Duboe's deposition were issued pursuant to its inherent power does not shield them from all review. A trial court's exercise of its

inherent power is reviewed for an abuse of discretion. See *Putnam v. Scherbring*, 297 Neb. 868, 902 N.W.2d 140 (2017). We have emphasized, however, that this is "a fairly deferential standard" and that a court abuses its discretion "when its decision is based upon reasons that are *untenable or unreasonable* or if its action is *clearly* against justice or conscience, reason, and evidence." *Id.* at 878, 902 N.W.2d at 146 (emphasis in original). We have also recognized that a trial court has broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair trial. *Id.* We find that neither the district court's February 22, 2018, order nor its subsequent order striking Duboe as an expert witness was an abuse of this broad discretion.

By February 22, 2018, the lawsuit had been pending for *over 4 years* and Carrizales' expert witness had not yet been deposed. Case progression standards adopted by this court provide that 98 percent of civil jury cases are to be disposed of within 18 months of filing. See § 6-101(A). It appears that the district court could have and should have done more at earlier stages in this case to expedite its completion. But even if the district court's initial case management efforts were wanting, we do not believe that precluded the district court from eventually taking steps to hasten the resolution of a case that had been pending for over twice as long as our case progression standards state the vast majority of cases of this type should. Specifically, we do not find it unreasonable that the district court imposed a relatively short deadline by which the parties were required to identify dates when Duboe could be deposed and to complete the deposition. We reach this conclusion even assuming Carrizales was not solely to blame for the fact that Duboe had not yet been deposed or for the overall delay in bringing this case to completion.

As for the district court's order striking Duboe as an expert witness, we cannot, under the circumstances, say that was an abuse of discretion either. The district court's February 22, 2018, order required Carrizales to, within 14 days from the

date of the order, identify dates within the next 2 months in which both Duboe and the defendants' counsel were available for Duboe's deposition to be taken. The evidence in our record demonstrates that Carrizales did not comply with this portion of the order. The evidence shows that the only dates Carrizales' counsel identified on which both he and defense counsel would be available were April 23 and 24, 2018. Setting aside the fact that April 23 and 24 were just outside the district court's 2-month deadline, counsel for Carrizales stated in his affidavit that by the time both defense counsel confirmed they would be available on those dates, counsel for Carrizales learned Duboe was no longer available.

We would perhaps have a different case before us if, after failing to identify dates in which Duboe and the necessary lawyers were available for Duboe to be deposed, counsel for Carrizales had promptly alerted the district court of the difficulty of complying with its order. There is nothing in our record, however, showing that counsel for Carrizales did anything to bring the issue to the attention of the district court until the doctors filed a motion to strike in May 2018. By that time, more than 2 months had passed and Duboe still had not been deposed. Only then did the district court do what it said it would do in its February 22, 2018, order and strike Duboe as an expert witness.

Under these circumstances, we do not believe that the district court's decision to strike Duboe as an expert witness was based on reasons that were untenable or unreasonable. See *Putnam v. Scherbring*, 297 Neb. 868, 902 N.W.2d 140 (2017). Neither can we find that the district court's action was clearly against justice or conscience, reason, and evidence. See *id.* Rather, it appears that the district court concluded that Carrizales had not complied with its earlier order and had not offered a compelling reason for noncompliance, and therefore, it enforced the order in the manner it said that it would. We find no abuse of discretion.

### 3. SUMMARY JUDGMENT

### (a) Factual Background

Shortly after the district court issued its order striking Duboe as an expert witness, Creighton University Medical Center and the doctors filed motions for summary judgment. Prior to the hearing on the motion for summary judgment, Carrizales voluntarily dismissed her case against Creighton University Medical Center.

At the hearing on the doctors' motion for summary judgment, they offered, among other things, an affidavit of Gray. Gray's affidavit stated that she, Wulf, and Arms provided medical care to Carrizales in connection with the birth of Carrizales' daughter; that Gray was familiar with the allegations in Carrizales' complaint; that she was familiar with the standard of care required of physicians monitoring the labor of patients and the delivery of children; and that based upon her review of the medical records, her personal knowledge, and her training, education, and experience, she, Wulf, and Arms met the applicable standard of care in treating Carrizales and Carrizales' daughter.

Carrizales objected to the receipt of Gray's affidavit, arguing that the doctors failed to designate her as an expert witness and that her testimony lacked foundation. In opposition to the motion for summary judgment, Carrizales offered, among other things, various discovery responses of the doctors, portions of a deposition of Gray, portions of a deposition of a midwife who provided care to Carrizales during the labor and delivery, and an affidavit of Carrizales. Carrizales also offered an affidavit of Duboe in which Duboe averred that the doctors breached the standard of care during the labor and delivery process. The district court sustained the doctors' objection to Duboe's affidavit, referring to its earlier ruling striking Duboe as an expert witness.

The district court issued an order granting the doctors' motion for summary judgment. The district court concluded that Gray's affidavit could be considered for purposes of the

doctors' summary judgment motion and that it was sufficient to make a prima facie case that each of the doctors met the applicable standard of care. The district court then found that Carrizales failed to create a genuine issue of material fact as to whether the doctors met the standard of care. It explained that in order to create a genuine issue of material fact as to whether the doctors breached the standard of care, Carrizales was required to provide expert testimony contradicting Gray's testimony that the doctors had met the standard of care. The district court stated that it had stricken Duboe as an expert witness and that Carrizales had failed to provide other expert testimony that would create a genuine issue of material fact.

### (b) Standard of Review

[8] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Lassalle v. State*, 307 Neb. 221, 948 N.W.2d 725 (2020).

[9] An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Id.*

### (c) Analysis

Carrizales argues on appeal that the district court erred both by finding that Gray's affidavit established a prima facie case that the doctors met the standard of care and by finding that Carrizales failed to present evidence showing the existence of a genuine issue of material fact. We address each of these arguments below.

[10] At the summary judgment stage, it is well settled that a physician's self-supporting affidavit suffices to make a prima facie case that the physician did not commit medical malpractice. *Lombardo v. Sedlacek*, 299 Neb. 400, 908 N.W.2d 630

(2018). Carrizales contends that because of certain discovery responses provided by the doctors and certain testimony in Gray's deposition, however, the district court should not have found that Gray's affidavit made such a prima facie case here. As we will explain, we disagree.

Carrizales first argues that the doctors should not have been permitted to rely on Gray's affidavit because they failed to designate her as an expert witness. In support of this argument, Carrizales argues that if the doctors desired to rely on an affidavit from Gray in support of their motion for summary judgment, they were obligated to disclose their intention to do so in discovery. Specifically, Carrizales argues that the doctors did not disclose their intention to rely on Gray as an expert in their expert witness designation, in response to various requests for production of documents, and in response to interrogatories.

We are not persuaded that the doctors were required to disclose an intention to rely on Gray for purposes of summary judgment. The interrogatories Carrizales relies on sought the identity of persons the doctors expected or intended to call "at the trial." The doctors' expert witness designation likewise identified those experts "who will be called to testify on behalf of [the doctors] at a trial of this case." The doctors did not seek to call Gray as a witness at trial; they offered her affidavit in support of their motion for summary judgment. As for the doctors' responses to Carrizales' requests for production, the requests for production at issue sought reports of or communications with experts the doctors either "retained" or "commissioned." Carrizales has not directed us to anything in our record suggesting that Gray, a party to the case, was retained or commissioned as an expert witness, and even assuming she was, Carrizales has not shown that the doctors failed to produce documents responsive to these requests.

Carrizales also argues that even if Gray's affidavit could shift the burden to Carrizales as to the claim against Gray, it could not do so with respect to the claims against the other

doctors. On this point, however, Carrizales argues only that the other doctors also did not identify Gray in response to interrogatories seeking the identity of persons the other doctors expected or intended to call at trial. As mentioned above, Gray was not called as a witness at trial.

Carrizales next contends that Gray's affidavit testimony lacked adequate foundation. In support of this argument, Carrizales relies primarily on portions of Gray's deposition testimony. Gray stated in that deposition that she lacked an independent recollection of Carrizales' labor apart from her medical records. She also stated that she had not reviewed the medical records of Carrizales' daughter and did not have an opinion as to whether Carrizales' daughter suffered an injury on the day she was born. Counsel for the doctors also stated during the deposition that Gray would not be expressing an opinion as to what caused Carrizales' daughter's current condition. Carrizales argues that these statements showed Gray lacked adequate foundation to provide an opinion that she and the other doctors met the standard of care. We disagree.

[11] A court should not admit expert testimony if it appears the witness does not possess facts that will enable him or her to express an accurate conclusion, as distinguished from a mere guess or conjecture. *Orchard Hill Neighborhood v. Orchard Hill Mercantile*, 274 Neb. 154, 738 N.W.2d 820 (2007). Gray may have needed to rely on medical records to assess the care provided by the doctors, and she may not have formed opinions as to whether Carrizales' daughter was injured or the causation thereof, but we do not believe any of this would preclude her from offering an accurate conclusion as to whether the doctors met the standard of care.

Finally, Carrizales contends that the district court should not have granted summary judgment to the doctors because she offered evidence that created a genuine issue of material fact. Gray's affidavit shifted the burden to Carrizales to produce admissible evidence that would create a genuine issue of material fact as to whether the doctors complied with the standard

of care. See *Lombardo v. Sedlacek*, 299 Neb. 400, 908 N.W.2d 630 (2018). Generally, expert testimony from a medical professional is required to establish the standard of care in a medical malpractice action. See *id.* The only expert opinion Carrizales offered that contradicted Gray's standard of care opinion was expressed by Duboe. As we have already concluded, however, the district court acted within its discretion when it precluded Carrizales from relying on Duboe as an expert.

There is an exception to the general rule requiring expert testimony as to the medical standard of care. Under the common knowledge exception, expert testimony is not required where a layperson with common knowledge can infer negligence. See, e.g., *Green v. Box Butte General Hosp.*, 284 Neb. 243, 818 N.W.2d 589 (2012). Although Carrizales does not rely expressly on this exception, she claims that other evidence in the summary judgment record besides Duboe's affidavit created a genuine issue of material fact. She points to statements in her own affidavit that she was told during her labor she would undergo a cesarean section but that the procedure was never performed. She also directs us to deposition testimony of a midwife involved in Carrizales' labor and delivery who disagreed with Gray's deposition testimony that Gray was merely a consulting physician. The midwife testified to her belief that Gray was supervising the midwife. None of this evidence, however, can create a genuine issue of material fact as to whether the doctors complied with the standard of care. There is no expert testimony contradicting Gray's opinion that the doctors met the standard of care, and we do not believe a layperson could infer negligence under these circumstances.

We find no merit to Carrizales' arguments that the district court erred by granting summary judgment to the doctors.

### 4. MOTION TO ALTER OR AMEND

Carrizales also argues that the district court erred by denying her motion to alter or amend. In support of her contention

that the district court should have granted her motion to alter or amend, Carrizales merely repeats the arguments we have already rejected above. We find no error in the district court's denial of the motion to alter or amend.

## IV. CONCLUSION

Because we find no error on the part of the district court, we affirm.

AFFIRMED.