Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/03/2023 09:05 AM CST

PAUL HOAGBIN, APPELLANT, V. SCHOOL DISTRICT
NO. 28-0017 OF DOUGLAS COUNTY, NEBRASKA,
ALSO KNOWN AS MILLARD PUBLIC SCHOOLS,
A POLITICAL SUBDIVISION OF THE STATE
OF NEBRASKA, APPELLEE.

___ N.W.2d ___

Filed February 3, 2023.    No. S-21-1026.

1. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.

3. **Contracts.** The interpretation of a contract and whether the contract is ambiguous are questions of law.

4. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.

5. **Contracts: Wages.** When a party's Nebraska Wage Payment and Collection Act claim is premised on a written contract, the meaning of that contract may present a question of law to be decided by the court.

6. **Contracts: Wages: Employer and Employee.** Under the Nebraska Wage Payment and Collection Act, when the employee and the employer dispute whether compensation is owed based on an existing contract or agreement, the court determines the proper interpretation of the agreement.

7. **Contracts.** The meaning of an unambiguous contract is a question of law.

8.  **Contracts: Wages.** Relief, if any, under the Nebraska Wage Payment
    and Collection Act is specifically based on the agreement to pay
    the employee.

Appeal from the District Court for Douglas County: Tɪᴍᴏᴛʜʏ
P. Bᴜʀɴs, Judge. Affirmed.

Jonathan C. Hunzeker, of Norby & Welding, L.L.P., for
appellant.

Duncan A. Young, Jeff C. Miller, and Keith I. Kosaki, of
Young & White Law Office, for appellee.

Hᴇᴀᴠɪᴄᴀɴ, C.J., Mɪʟʟᴇʀ-Lᴇʀᴍᴀɴ, Cᴀssᴇʟ, Sᴛᴀᴄʏ, Fᴜɴᴋᴇ,
Pᴀᴘɪᴋ, and Fʀᴇᴜᴅᴇɴʙᴇʀɢ, JJ.

Mɪʟʟᴇʀ-Lᴇʀᴍᴀɴ, J.
## I. NATURE OF CASE
Paul Hoagbin, a public school teacher, was underpaid for
several years by the appellee, School District No. 28-0017
of Douglas County, Nebraska, also known as Millard Public
Schools (the District). After the salary error was discovered
in 2018, the District corrected Hoagbin's salary, retroactive
to the start of the 2018-19 school year, but did not make
corrections for prior school years. The District relied on
the provision in the collective bargaining agreement (CBA)
which stated that "[a]ny error found in salary shall only be
corrected retroactive to the beginning of the year in which the
error was discovered . . . ." Hoagbin filed a grievance, which
was denied at each stage as untimely and without merit. He
sued the District in the district court for Douglas County
and alleged, inter alia, that the Nebraska Wage Payment and
Collection Act (NWPCA), Neb. Rev. Stat. §§ 48-1228 to
48-1236 (Reissue 2021), provided him with an individual
right to seek compensation for the 2015-16, 2016-17, and
2017-18 school years and that this right was not affected by
the CBA. The parties each moved for summary judgment,

and the district court determined that Hoagbin could not succeed under the CBA or the NWPCA and granted the District's motion for summary judgment. We affirm the order of the district court.

## II. STATEMENT OF FACTS

Hoagbin, a public school teacher, alleges that he is entitled to backpay due to errors in salary calculations for the 2015-16, 2016-17, and 2017-18 school years. During the relevant years, Hoagbin had completed his master's degree, as well as certain postgraduate credit hours. Hoagbin's employment is part of the bargaining unit represented for purposes of collective bargaining by the Millard Education Association (the Union). Hoagbin's individual contract with the District incorporated the CBA by reference.

In October 2018, the Union and the District discovered a salary calculation error affecting Hoagbin and seven other teachers. Hoagbin's salary did not accurately reflect credit for his postgraduate study. The District corrected Hoagbin's salary retroactive to the start of the 2018-19 school year; because of the provision in the CBA, the District did not correct errors made in prior school years.

The CBA applicable to the 2015-16, 2016-17, and 2017-19 school years contains the following language, changed only with respect to updating the years given by example in the clause:

> Any error found in salary shall only be corrected retroactive to the beginning of the year in which the error was discovered or the year in which the specific error was brought to the attention of Human Resources in writing (e.g. a salary error discovered in January of 2016 will be corrected retroactively to the September of 2015 pay period). The District may (but shall not be required) to delay the correction of errors that decrease a teacher's salary until the next contract year.

After the salary error had been corrected and Hoagbin had started receiving retroactive backpay, Hoagbin contacted the District's human resources department in November 2018 to inquire about the accuracy of his November paycheck. Hoagbin was concerned that the increased amount was a mistake and that he would later be required to pay money back to the District. On December 19, an employee from the human resources department emailed Hoagbin and informed him of the error concerning the initial 2018-19 salary calculation and an explanation of the error. The email further informed Hoagbin that his 2018-19 salary had been corrected, and it advised him that he would receive backpay retroactive to the start of the 2018-19 school year pursuant to the terms of the 2017-19 CBA.

In April 2019, a representative from the Nebraska State Education Association contacted the District's office of human resources to inquire further about the salary error and its discovery. The Nebraska State Education Association is the Union's parent labor organization and is not a collective bargaining agent for Hoagbin. A human resources employee replied that the 2018-19 salary calculation error was caused by the failure to include Hoagbin's postgraduate credit hours and that the same error predated the 2018-19 school year. The April 22, 2019, email from human resources stated:

> Based on the wording of the [CBA], we have made this correction retroactive to the start of the 2018-19 school year. However, consistent with other salary errors (both in favor of the employee as well as [in] favor of the District), we are not going back to prior school years for this error.

On April 14, 2020, Hoagbin filed a written grievance to his building principal, and by agreement of the parties, it was submitted to the associate superintendent for human resources. The grievance sought backpay for the 2015-16, 2016-17, and 2017-18 school years. The grievance immediately proceeded to the second level. On April 28, the associate

superintendent issued a written decision that denied the grievance, because (1) having been submitted more than one calendar year after the events giving rise to the grievance, it was out of time; and (2) the 2017-19 CBA between the District and the Union limited retroactive backpay or recoupment to the school year in which the salary error was reported to the District. Hoagbin appealed to the District's superintendent, who denied the grievance based on the CBA.

Thereafter, Hoagbin filed suit in district court, alleging, inter alia, that he had an individual statutory right to payment under the NWPCA, which cannot be waived by the CBA or the District's grievance rule. The parties each moved for summary judgment. Following a hearing on whether Hoagbin was entitled to backpay for the 2015-16, 2016-17, and 2017-18 school years under the terms of the CBA, the district court granted the District's motion and denied Hoagbin's motion for summary judgment. Although the district court expressed sympathy with Hoagbin's circumstance, it determined that the CBA did not permit Hoagbin's salary to be corrected retroactively and that Hoagbin was not entitled to an award of wages under the NWPCA. According to the undisputed evidence, the salary error was discovered and reported during the 2018-19 school year, and Hoagbin's salary was corrected retroactively to the beginning of that school year. The district court interpreted the CBA and determined that the District had not agreed to pay Hoagbin additional backpay under the CBA, and consequently was not obligated to do so under the NWPCA. The district court noted that the same provision limiting an employee's right to collect underpaid compensation for prior years would also prevent the District from recouping an overpaid employee's salary for prior years. The district court also explained that under the CBA and the grievance procedure, Hoagbin did not timely pursue his right to grieve his wage issue.

Hoagbin appeals.

## III. ASSIGNMENTS OF ERROR

Hoagbin assigns, restated, that the district court erred generally when it determined that the District was entitled to summary judgment and specifically determined (1) that the CBA waived employees' rights to collect underpaid compensation and hence there was no right thereto under the NWPCA and (2) that Hoagbin failed to timely grieve the issue of backpay.

## IV. STANDARDS OF REVIEW

[1] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Carrizales v. Creighton St. Joseph*, 312 Neb. 296, 979 N.W.2d 81 (2022).

[2] An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Id*.

[3,4] The interpretation of a contract and whether the contract is ambiguous are questions of law. *Lassalle v. State*, 307 Neb. 221, 948 N.W.2d 725 (2020). An appellate court independently reviews questions of law decided by a lower court. *Id*.

## V. ANALYSIS

Hoagbin contends generally that the retroactive pay he seeks in this action should be considered "wages" which are owed to him under the NWPCA and that such pay could not be eclipsed by provisions of the CBA either through its grievance procedure or by its provision limiting retroactive pay. We reject these contentions.

### 1. NWPCA General Provisions

The NWPCA obligates an employer to "pay all wages due its employees on regular days designated by the employer

or agreed upon by the employer and employee." § 48-1230(1). An employee may sue his or her employer if the employer fails to pay the employee's wages as they become due. *Lassalle v. State, supra*. Under the NWPCA, "[w]ages" are defined as "compensation for labor or services rendered by an employee . . . when previously agreed to and conditions stipulated have been met by the employee." § 48-1229(6). Thus, a payment will be considered "wages" subject to the NWPCA if (1) it is compensation for labor or services, (2) it was previously agreed to, and (3) all the conditions stipulated have been met. § 48-1229(6).

In a case purportedly subject to the NWPCA, the court first determines whether the compensation sought by the employee is a wage subject to the NWPCA. It is undisputed that Hoagbin rendered services and seeks compensation for his past service, thus satisfying the first element noted above. However, to prove the second and third elements noted above, the undisputed evidence must show that the District previously agreed to pay Hoagbin retroactively in the manner and amount he seeks and that all conditions to which the parties stipulated have been met.

In its ruling on the cross-motions for summary judgment, the district court analyzed, inter alia, the 2017-19 CBA and its designated grievance procedure—the District's board of education rule 4325.1 (Rule)—and determined that no agreement existed to support retroactive pay and that Hoagbin did not adhere to timeliness conditions that would support an NWPCA claim. As we explain below, we find no error in the district court's analysis, and for convenience, we first analyze the grievance procedure's timeliness condition and thereafter analyze the substantive terms of the agreement.

(a) NWPCA: Timeliness Condition of
Grievance Procedure Not Satisfied

As the District correctly contends, Hoagbin's claim for retroactive pay directly concerns the grievance procedure and its

timeframes as set forth in the Rule incorporated in the CBA by reference. The Rule provides, inter alia, that an employee "shall" initiate the first step of the grievance procedure "within ten (10) working days after the occurrence of the event or condition which is the subject of the grievance or the last of a series of events and conditions which constitute the grievance." The Rule further states:

> I. Any employee who has a grievance not otherwise covered by a grievance procedure included within a [CBA] or other specific grievance procedure shall use the procedures set forth in this Rule. The District shall consider the grievance abandoned and moot if the grievant fails to comply with the requirements and time limits set forth in this Rule.
>
> . . . .
>
> VI. The time limits in these procedures are for the purpose of insuring prompt action. If an employee does not pursue the next step of a procedure within the time period specified, it shall constitute an abandonment of the grievance.

Although the District waived certain formalities in the grievance process, there is no dispute that the 10-day period for initiating a grievance remained in force, and to the contrary, the District explicitly did not waive the 10-day requirement.

Even giving Hoagbin the benefit of all inferences in the record, it is undisputed that he was aware of the "event" denying him compensation in prior years by April 22, 2019, the date of the email he received explaining that the salary correction the District had undertaken would not be applied retroactive to prior school years. Hoagbin filed his salary grievance nearly a year later, in April 2020. By not grieving the District's decision within the 10 days of its occurrence, Hoagbin abandoned his grievance, according to paragraph VI of the Rule.

Thus, because Hoagbin did not satisfy the conditions of the parties' agreement set forth in the Rule for maintaining

a grievance, the district court correctly determined that the evidence failed to show that all the conditions stipulated to had been met. See *Drought v. Marsh*, 304 Neb. 860, 937 N.W.2d 229 (2020) (noting employees did not meet conditions required under written employment agreement). Accordingly, Hoagbin's claim is not for "[w]ages" subject to the NWPCA. See § 48-1229(6).

(b) NWPCA: No Agreement to Pay
Full Retroactive Compensation

[5-7] Even assuming the failure to adhere to the grievance timeliness procedure did not bar Hoagbin's claims, examining the agreement, we agree with the district court that there was no agreement to correct salary errors retroactively beyond the beginning of the school year in which the error was discovered. Although Hoagbin frames his claim as arising under the NWPCA, he also alleged that his right to a further salary adjustment arose out of the written labor contracts with the District. We have observed that when a party's NWPCA claim is premised on a written contract, the meaning of that contract may present a question of law to be decided by the court. *Lassalle v. State*, 307 Neb. 221, 948 N.W.2d 725 (2020). When the employee and the employer dispute whether compensation is owed based on an existing contract or agreement, the court determines the proper interpretation of the agreement. *Professional Firefighters Assn. v. City of Omaha*, 290 Neb. 300, 860 N.W.2d 137 (2015). A court may make such a determination because the meaning of an unambiguous contract is a question of law. *Lassalle v. State, supra.*

The CBA provided that any salary error shall only be corrected retroactive to the beginning of the school year in which the error was discovered or the year in which the specific error was brought to the attention of human resources. Given the unambiguous language of the CBA, Hoagbin's claim that he is entitled to compensation for errors in prior years is not well founded.

The underpayment error was discovered and reported during the 2018-19 school year, and under the CBA, the District properly corrected the error retroactively limited to the beginning of that school year. Hoagbin did not have an agreement to be paid for salary errors made in prior school years once they had passed without discovery of the error. The backpay he sought was not compensation to which the parties had agreed, and accordingly was not "[w]ages" subject to the NWPCA. See § 48-1229(6).

## 2. Retroactive Pay Provision
## Proper Subject of CBA and Not
## Inconsistent With Obligations
## Under NWPCA

Hoagbin also contends that notwithstanding the terms of the CBA discussed above, the NWPCA creates an individual statutory right to receive wages that effectively overrides the limitations of the written employment contract between the parties. We reject this contention.

Hoagbin asserts, rephrased, that the contractual limitation on correcting past salary errors is not a proper subject of a bargaining agreement, because such limitation is inconsistent with the NWPCA. In this regard, he relies on the U.S. Supreme Court's decision in *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981). Hoagbin's reliance is misplaced. In *Barrentine*, unionized truckdrivers sought compensation for conducting mandatory pretrip safety inspections for which they were not getting paid. After their grievance was unsuccessful, the truckdrivers filed an action against their employer under the federal Fair Labor Standards Act. The Court concluded that the act conferred statutory rights to a minimum wage and overtime pay and that thus, the provisions in the bargaining agreement to the contrary could not eclipse these statutory rights. *Barrentine* is inapposite.

As we understand his argument, Hoagbin is challenging the CBA on public policy grounds or, alternatively, is asserting that the NWPCA provides an independent right. We believe that Hoagbin's argument lacks merit.

[8] In the context of wrongful discharge, we have noted that the NWPCA does not represent a "'very clear mandate of public policy,'" and we have declined to use the NWPCA to provide a basis for additional civil actions. *Malone v. American Bus. Info.*, 262 Neb. 733, 739, 634 N.W.2d 788, 793 (2001). We have also noted that the NWPCA does not impose criminal sanctions. *Malone v. American Bus. Info., supra*. The NWPCA is designed to allow workers to enforce "substantive rights to compensation for work performed"; the right to payment of wages arises "not from the statute but from the employment relationship itself." *Malone v. American Bus. Info.*, 262 Neb. at 739-40, 634 N.W.2d at 793. The NWPCA does not declare an important public policy which could provide an independent basis for civil relief separate from the employment agreement. *Malone v. American Bus. Info., supra*. Relief, if any, under the NWPCA is specifically based on the agreement to pay the employee. See *Lassalle v. State*, 307 Neb. 221, 948 N.W.2d 725 (2020).

For completeness, we note that we are aware of decisions in addition to *Barrentine* which illustrate the public policy limits of collective bargaining agreements. Compare *Varner v. National Super Markets, Inc.*, 94 F.3d 1209 (8th Cir. 1996) (concluding sexual harassment claim not limited by grievance procedures in bargaining agreement, because courts possess specific plenary powers to secure compliance with title VII of the Civil Rights Act of 1964). See, also, *Hogelin v. City of Columbus*, 274 Neb. 453, 741 N.W.2d 617 (2007) (noting collective bargaining agreement did not waive statutory maximum hours for firefighters). In view of the foregoing, we reject Hoagbin's assertion of rights under the NWPCA independent of the parties' agreement.

## VI. CONCLUSION

As explained above, the district court did not err when it determined that the compensation Hoagbin seeks in this action was not wages under the NWPCA and therefore not eligible for an award under the NWPCA. Additionally, we have concluded that the terms of the CBA on which the District and court relied to deny recovery are not against public policy embedded in the NWPCA. The district court did not err when it granted summary judgment in favor of the District and denied Hoagbin's motion for summary judgment. We affirm the order of the district court.

Affirmed.